306 P.3d 175

**Bert VILLON and Mark Apana, Plaintiffs,**

v.

**MARRIOTT HOTEL SERVICES, INC., dba Wailea Marriott Resort, Defendant.**

**Reneldo Rodriguez and Johnson Basler, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Starwood Hotels & Resorts Worldwide, Inc., dba Westin Maui Resort & Spa, Defendant.**

**No. SCCQ–11–0000747.**

Supreme Court of Hawai'i.

July 15, 2013.

Ashley Ikeda & Lori K. Aquino, Weinberg, Roger & Rosenfeld, Honolulu, Harold Lichten & Shannon Liss–Riordan, pro hac vice, (Lichten & Liss–Riordan, P.C.), for plaintiffs.

Barry W. Marr & Richard M. Rand, Honolulu, Marr Jones & Wang, for defendant Marriott Hotel Services, dba Wailea Marriott Resort.

Paul Alston, Anna Elento–Sneed, & Maren Calvert, Alston Hunt Floyd & Ing, Honolulu, for defendant Starwood Hotels & Resorts Worldwide dba Westin Maui Resort & Spa.

RECKTENWALD, C.J., NAKAYAMA, and McKENNA, JJ., with ACOBA, J., concurring and dissenting separately, with whom Circuit Judge CHAN, in place of DUFFY, J., recused, joins.

**1.** The Honorable Leslie E. Kobayashi, United States District Judge, presided.

**2.** The District Court had also certified the following two questions to this court:
2. If food or beverage service employees of a hotel or restaurant are entitled to enforce Haw.Rev.Stat. [§ ] 481B–14 through Haw.Rev. Stat. §§ 388–6, 388–10, and 388–11, what statute of limitations applies?
3. May food and beverage service employees of a hotel or restaurant bring a claim under Haw.Rev.Stat. § 480–2(e) for an alleged violation of Haw.Rev.Stat. § 481B–14, where those employees have alleged that their employer's

Opinion of the Court by McKENNA, J.

## I. Introduction

The United States District Court for the District of Hawaii [1] ("District Court") certified the following question [2] to this court:

May food or beverage service employees of a hotel or restaurant bring a claim against their employer based on an alleged violation of Haw.Rev.Stat. § 481B–14 by invoking Haw.Rev.Stat. §§ 388–6, 388–10, and 388–11 and without invoking Haw.Rev. Stat. §§ 480–2 or 480–13?

The instant certified question picks up where our opinion on a related certified question in *Davis v. Four Seasons Hotel, Ltd.*, 122 Hawai'i 423, 428 n. 12, 228 P.3d 303, 308 n. 12 (2010) left off: "Employees also contend that Employees can enforce HRS § 481B–14 through HRS §§ 388–6, 10, and 11. However, this argument will not be addressed because it is beyond the scope of the certified question." The parties fully briefed their positions, and we also granted leave to file amicus briefs to Four Seasons Hotel, Ltd. ("Four Seasons amicus") and Raymond Gurrobat, Loretta Chong, Marti Smith, Jonalen Kelekoma, and Darren Miyasato ("Gurrobat amici"). The amici curiae have also fully briefed this court.

We now answer the certified question in the affirmative and hold that when a hotel or restaurant applying a service charge for the sale of food or beverage services allegedly violates HRS § 481B–14 (2008) (1) by not distributing the full service charge directly to its employees as "tip income" (in other words, as "wages and tips of employees"), and (2) by failing to disclose this practice to

conduct has caused them injury that resulted from an unfair method of competition?
This court issued an Order on Certified Question, ordering, "without conclusively determining whether this court will answer question # 1," (the instant question) that only that question is amenable to answer pursuant to Hawai'i Rules of Appellate Procedure Rule 13 (2011), as it "concerns the law of Hawai'i that is determinative of the plaintiffs' cause and that there is no clear controlling precedent in the Hawai'i judicial decisions." Therefore, questions 2 and 3 are not before this court.

the purchaser of the services, the employees may bring an action under HRS §§ 388–6 (1993), –10 (1993 & Supp.1999), and –11 (1993 & Supp.1999) to enforce the employees' rights and seek remedies.

## II. Background

■ The factual background relevant to a certified question proceeding "is based primarily upon the information certified to this court by the district court, as well as the allegations contained within [the plaintiffs' complaint]." *Davis*, 122 Hawai'i at 425, 228 P.3d at 305 (citing *TMJ Hawaii, Inc. v. Nippon Trust Bank*, 113 Hawai'i 373, 374, 153 P.3d 444, 445 (2007)) (relying upon the information certified to the court by the district court and the facts set forth in the plaintiff's amended complaint).

In its Certified Questions to the Hawai'i Supreme Court from the United States District Court for the District of Hawai'i in Civ. No. 08–00529 LEK–RLP and Civ. No. 09–0016 LEK–RLP ("Certified Questions"), the District Court stated that Bert Villon and Mark Apana's ("Villon Plaintiffs") Amended Class Action Complaint and Reneldo Rodriguez, Johnson Basler, on behalf of themselves and all others similarly situated's ("Rodriguez Plaintiffs") Second Amended Complaint were before it pursuant to diversity jurisdiction in accordance with the Class Action Fairness Act. In the Villon Plaintiffs' Amended Class Action Complaint, they alleged the following facts:

6. For banquets, events, meetings and in other instances, the defendant [Marriott Hotel Services, Inc., dba Wailea Marriott Resort ("Marriott" or "Marriott Defendant")] adds a preset service charge to customers' bills for food and beverage provided at the hotel.

7. However, the defendant does not remit the total proceeds of the service charge as tip income to the employees who serve the food and beverages.

8. Instead, the defendant has a policy and practice of retaining for itself a portion of these service charges (or using it to pay managers or other non-tipped employees who do not serve food and beverages).

9. The defendant does not disclose to the hotel's customers that the service charges are not remitted in full to the employees who serve the food and beverages.

10. For this reason, customers are misled into believing that the entire service charge imposed by defendant is being distributed to the employees who served them food or beverage when, in fact, a smaller percentage is being remitted to the servers. As a result, customers who would otherwise be inclined to leave an additional gratuity for such servers frequently do not do so because they erroneously believe that the servers are receiving the entire service charge imposed by the hotel.

Marriott does not dispute that Plaintiffs did not receive 100% of service charges and that this fact was not disclosed to consumers.

It appears that, at the time the District Court filed its Certified Questions, the Rodriguez Plaintiffs had filed a Third Amended Complaint, which alleged the following facts, similar to those alleged in the Villon Plaintiffs' Amended Class Action Complaint:

6. For banquets, events, meetings, and in its restaurant and in other instances, the defendant [Starwood Hotels & Resorts Worldwide, Inc., dba Westin Maui Resort & Spa ("Starwood" or "Starwood Defendant")] adds a preset service charge of approximately 20% to customers' bills for food and beverage provided at the hotel.

7. However, the defendant does not remit the total proceeds of the service charge as tip income to the employees who serve the food and beverages.

8. Instead, the defendant has a policy and practice of retaining for itself a portion of these service charges (or using it to pay managers or other non-tipped employees who do not serve food and beverages).

9. The defendant does not adequately disclose to the hotel and restaurant's customers that the service charges are not remitted in full to the employees who serve the food and beverages.

10. For this reason, customers are misled into believing that the entire service charge imposed by defendant is being distributed to the employees who served them food or beverage when, in fact, a smaller

percentage is being remitted to the servers. As a result, customers who would otherwise be inclined to leave an additional gratuity for such servers frequently do not do so because they erroneously believe that the servers are receiving the entire service charge imposed by the hotel, or they believe that in light of the 20% service charge that no other gratuity should be paid.

. . . .

13. The defendant's failure to remit the entire service charge to its employees as tip income or to disclose to its customers that the service charges [sic] is not remitted in full to its employees as tip income has resulted in the plaintiffs' loss of tip income. Plaintiffs have lost tip income both by not receiving the total proceeds of service charges that are legally their tip income, as well as by not receiving tip income that customers would otherwise likely leave if they were not led to believe that the wait staff was already receiving a generous gratuity (i.e.[,] the service charge on the bills).

Starwood does not dispute that Plaintiffs did not receive 100% of the service charges and that this fact was not disclosed to consumers.

Both the Villon Plaintiffs' Amended Class Action Complaint and the Rodriguez Plaintiffs' Third Amended Complaint allege the following as Count V:

As a result of the defendant's unlawful failure to remit the entire proceeds of food and beverage service charges to the food and beverage servers, the plaintiffs have been deprived of income which constitutes wages, which is actionable under Hawaii Revised Statutes Section[s] 388–6, 10, and 11. Pursuant to those statutes, the plaintiffs hereby bring a claim of unpaid wages, including liquidated damages, interest, and attorneys' fees.

Procedurally, the certified questions arose upon the entry of the following orders in the District Court: (1) Order Administratively Terminating, Without Prejudice, Plaintiffs' Motion for Summary Judgment and Defendant's Motion to Dismiss Amended Class Action Complaint, Filed June 28, 2010, filed September 8, 2010, in Civil No. 08–00529

LEK–RLP *(Villon & Apana v. Marriott Hotel Services, Inc., DBA Wailea Marriott Hotel)*; and (2) Order Granting Defendant's Motion to Certify Questions of Hawai'i State Law to the Hawai'i Supreme Court and Administratively Terminating, Without Prejudice, Plaintiffs' Motion for Class Certification, Plaintiffs' Motion for Partial Summary Judgment, and Defendant's Motion for Summary Judgment, filed September 8, 2010, in Civil No. 09–00016 LEK–RLP *(Rodriguez & Basler v. Starwood Hotels & Resorts Worldwide, Inc., DBA Westin Maui Resort & Spa).*

## III. Standard of Review

■ A question of law presented by a certified question is reviewable de novo under the right/wrong standard of review. *Francis v. Lee Enters.*, 89 Hawai'i 234, 236, 971 P.2d 707, 709 (1999) (citation omitted).

## IV. Discussion

### A. Plain Language

■ Plaintiffs argue that the language of the relevant statutes, Hawai'i Revised Statutes ("HRS") §§ 481B–14, 388–1 (1993), 388–6, 388–10, and 388–11, is plain and unambiguous. "[T]he fundamental starting point for statutory interpretation is the language of the statute itself. . . . And where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning." *Richardson v. City & County of Honolulu*, 76 Hawai'i 46, 63, 868 P.2d 1193, 1210 (1994) (citation omitted). The plain language of HRS § 481B–14 supports the Plaintiffs' contention that undisclosed and unpaid service charges are "tips," "wages," and "compensation." HRS § 481B–14 provides:

Hotel or restaurant service charge; disposition. Any hotel or restaurant that applies a service charge for the sale of food or beverage services shall distribute the service charge directly to its employees as tip income or clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees.

First, the statute provides that hotels and restaurants "shall distribute the service charge directly to its employees as tip income." (Emphasis added). In the alternative, HRS § 481B–14 permits hotels and restaurants to use service charges to "pay for costs or expenses other than wages and tips of employees," provided that hotels and restaurants "clearly disclose to the purchaser of the services" that this is being done. (Emphasis added). Thus, 100% of the service charge is considered to be "wages and tips of employees." Therefore, when a hotel or restaurant distributes less than 100% of a service charge directly to its employees without disclosing this fact to the purchaser, the portion withheld constitutes "tip income," synonymously phrased within HRS § 481B–14 as "wages and tips of employees."

The plain language of Chapter 388 also supports the Plaintiffs' contention that HRS § 481B–14 is enforceable through HRS §§ 388–6, –10, and –11. Moreover, the provisions of Chapter 388 regarding withholding wages appear to apply, as HRS § 388–1 defines "wages" as follows:

> compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation. It shall include the reasonable cost, as determined by the director under chapter 387, to the employer of furnishing an employee with board, lodging, or other facilities if such board, lodging, or other facilities are customarily furnished by the employer to the employer's employee but shall not include tips or gratuities of any kind, provided that for the purposes of section 388–6, "wages" shall include tips or gratuities of any kind.

(Emphasis added). Thus, for the purpose of enforcement under HRS § 388–6 in the instant proceeding, "wages" includes service charges as "tips or gratuities of any kind," [3] because HRS § 481B–14 defines service charges as "tip income" and "wages and tips of employees." HRS § 388–6 is entitled "Withholding of wages," and prohibits an employer from "retain[ing] ... any part or portion of any compensation earned by the employee except where required by federal or state statute or by court process or when such ... retentions are authorized in writing by the employee...." Service charges must be "compensation earned" by the employee, because they are levied upon the consumer based upon "labor or services rendered by an employee," usually in lieu of a traditional tip. HRS § 388–1.

Under HRS § 388–10, a violation of HRS § 388–6 subjects the employer to a civil penalty of twice the unpaid wages, plus interest:

> Any employer who fails to pay wages in accordance with this chapter without equitable justification shall be liable to the employee, in addition to the wages legally proven to be due, for a sum equal to the amount of unpaid wages and interest at a rate of six per cent per year from the date that the wages were due.

HRS § 388–11(a) gives employees standing to recover unpaid wages, and HRS § 388–11(c) further provides for an award of costs and attorneys' fees to prevailing employees:

> (a) Action by an employee to recover unpaid wages may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of oneself or themselves, or the employee or

3. The parties point out that this court has already addressed whether a certain type of service charge (hotel porterage fees) could constitute "gratuities of any kind" in *Heatherly v. Hilton Hawaiian Village Joint Venture*, 78 Hawai'i 351, 893 P.2d 779 (1995). In *Heatherly*, plaintiffs (hotel bellhops) challenged the circuit court's grant of summary judgment in favor of the hotel on the issue of whether porterage fees counted towards the employer's tip credit in determining the bellhops' minimum wage. 78 Hawai'i at 352, 893 P.2d at 780. *Heatherly*, however, is not helpful in determining whether service charges under HRS § 481B–14 are "gratuities of any kind" for two reasons. First, the *Heatherly* case predates the enactment of HRS § 481B–14 and is thus not helpful in interpreting that statute. Second, the *Heatherly* case held only, "The trade meaning of 'gratuities of any kind' is clearly a 'fact' that is material to whether the Hotels are entitled to summary judgment," and remanded the case to the circuit court for a determination of whether "porterage fees are a kind of gratuity or wages within the meaning of HRS chapter 387." 78 Hawai'i at 355, 359, 893 P.2d at 783, 787.

employees may designate an agent or representative to maintain the action.

. . . .

(c) The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow interest of six per cent per year from the date the wages were due, costs of action, including costs of fees of any nature, and reasonable attorney's fees, to be paid by the defendant. . . .

It is true that HRS § 387–1 (1993) defines "wages" to exclude "tips or gratuities" of any kind, but that is solely for the purpose of calculating the "tip credit" under HRS § 387–2 (1993 & Supp.2005), not for the purposes of allowing employers to withhold "service charges," "wages and tips of employees," and "tip income," from employees under HRS § 388–6.[4]

Hawai'i Administrative Rules ("HAR") Rule § 12–20–1 is the Department of Labor and Industrial Relations ("DLIR") regulation implementing HRS § 387–1. It defines "tip" to exclude "[c]ompulsory or negotiated service charges," again, for the purpose of calculating the "tip credit" under HRS § 387–2, as follows:

> "Tip" means a sum of money determined solely by a customer and given in recognition of service performed by an employee who retains it as a gift or gratuity. It may be paid in cash, bank check, or other negotiable instrument payable at par as well as amounts transferred by employer to employee by direction of the credit customer who designates amounts to be added to the customer's bill as tips. Compulsory or negotiated service charges and special gifts

in forms other than described above are not counted as tips.

HAR § 12–20–1 is over 30 years old; it became effective on October 2, 1981, nearly 20 years before HRS § 481B–14 was enacted. As such, it does not reflect the change HRS § 481B–14 made to the definition of wages. Moreover, the plain language of HRS § 481B–14 expressly equates 100% of a "service charge" with "tip income" and "wages and tips of employees." To the extent HRS § 481B–14 has redefined service charges, HAR 12–20–1's exclusion of service charges under its definition of "tips" is "not entitled to deference if the interpretation is plainly erroneous and inconsistent with both the letter and intent of the statutory mandate." *Haole v. State*, 111 Hawai'i 144, 150, 140 P.3d 377, 383 (2006) (citations omitted). Further, the DLIR has never defined "gratuities of any kind," which is a category broad enough to encompass service charges. Therefore, the DLIR's regulations do not serve as a helpful aid in understanding HRS § 481B–14.

▪ Marriott argues that the undisclosed amount of a service charge is not compensation earned but a "liquidated penalty," which "bears no relation to actual damages, if any, incurred by the employees." However, this argument speaks more to the remedy (HRS § 388–10, entitled "Penalties") rather than the right; an undisclosed and unpaid portion of a service charge is still a withheld tip or wage, actionable under Chapter 388. In sum, the plain language of HRS § 481B–14 and Chapter 388 indicates that a service charge is "compensation earned" as "tip income" or "wages and tips of employees." Therefore, an alleged violation of HRS

---

**4.** HRS § 387–1 defines "wage" to mean, with emphasis added, the following:

> legal tender of the United States or checks on banks convertible into cash on demand at full face value thereof and in addition thereto the reasonable cost as determined by the department, to the employer of furnishing an employee with board, lodging, or other facilities if such board, lodging, or other facilities are customarily furnished by such employer to the employer's employees. Except for the purposes of the last sentence of section 387–2, "wage" shall not include tips or gratuities of any kind.

In turn, the last sentence of HRS § 387–2(a statutory section setting forth Hawai'i's "tip credit") states:

> The hourly wage of a tipped employee may be deemed to be increased on account of tips if the employee is paid not less than 25 cents below the applicable minimum wage by the employee's employer and the combined amount the employee receives from the employee's employer and in tips is at least 50 cents more than the applicable minimum wage.

§ 481B–14 is enforceable through Chapter 388.

### B. Legislative History of HRS § 481B–14

Although resort to legislative history is not necessary when the plain language of a statute is clear, the legislative history of HRS § 481B–14 has been put at issue in these proceedings, and an examination of that history reveals that enforcement of HRS § 481B–14 through Chapter 388 was not an "absurd result" that the legislature could not have intended. *See Survivors of Medeiros v. Maui Land & Pineapple Co.*, 66 Haw. 290, 297, 660 P.2d 1316, 1321 (1983)(observing that the plain language rule does not preclude this court from examining the legislative history to "adequately discern the underlying policy which the legislature seeks to promulgate and … to determine if a literal construction would produce an absurd or unjust result, inconsistent with the policies of the statute").

HRS § 481B–14 was enacted by Act 16 of the 2000 Legislative Session. 2000 Haw. Sess. Laws Act 16, at 21–22. The legislature's stated purpose in enacting the statute was as follows:

SECTION 1. The legislature finds that Hawaii's hotel and restaurant employees may not be receiving tips or gratuities during the course of their employment from patrons because patrons believe their tips or gratuities are being included in the service charge and being passed on to employees.

The purpose of this Act is to require hotels and restaurants that apply a service charge for food or beverage services, not distributed to employees as tip income, to advise customers that the service charge is being used to pay for costs or expenses other than wages and tips of employees.

*Id.* The legislature's express findings evince a twofold concern: first, that patrons may not know that service charges may be "used to pay for costs or expenses other than wages and tips of employees"; and second, that employees "may not be receiving tips or gratuities" from these service charges. *Id.* This dual focus reflects the legislative evolu-

tion of H.B. 2123, the bill that eventually became Act 16.

When it was first introduced in the House, H.B. 2123, which was entitled "A BILL FOR AN ACT RELATING TO WAGES AND TIPS OF EMPLOYEES," sought only to "protect employees who receive or may receive tips or gratuities during the course of their employment from having these amounts withheld or credited to their employers." H.B. 2123, 20th Leg., Reg. Sess. (2000). H.B. 2123 proposed to amend the definition of "tips" in HRS § 387–1 to mean "gratuities in the form of money paid by a customer or added to a customer's charge either voluntarily or as a service charge by the employer." *Id.* The bill also proposed deleting the tip credit in HRS § 387–2. *Id.* It also proposed clarifying HRS § 388–1's definition of "wages" to exclude tips for all purposes. *Id.* Lastly, H.B. 2123 proposed to amend HRS § 388–6 so that employers would be prohibited from withholding tips and service charges in addition to wages. *Id.*

H.B. 2123 was first heard by the House Committee on Labor and Employment. Although the Marriott and Starwood Defendants and the Four Seasons amicus focus on DLIR Director Lorraine Akiba's testimony that H.B. 2123 would create confusion between federal and state law, she actually testified that only a portion of the bill (the deletion of the tip credit) would create an inconsistency between federal and state tip credit provisions. Akiba also testified that including service charges in the definition of tips would conflict with HAR § 12–20–1. As explained, *supra*, HRS § 481B–14 trumps HAR § 12–20–1.

The ILWU's position was that tips belong to employees. For that reason only, they opposed the inclusion of service charges as "tips," because they were aware of the hotels and restaurants' practice of keeping a portion of the service charges and did not want that portion attributed to employees for withholding and income tax purposes. The Marriott and Starwood Defendants view the ILWU's testimony as supporting their argument that service charges should not be treated as tips, but a closer examination reveals that the ILWU did not want employees taxed on por-

tions of service charges that employers kept. The ILWU also made the contradictory point that "tips" should be considered "wages" because union dues are based on wages.

The House Committee on Labor and Employment was swayed mostly by the testimony concerning confusion over the changes to the tip credit statute. Rather than persist in its attempts to change that provision, it changed its focus and concluded "that the problem lies with consumers who may not leave tips for the service employees, mistakenly thinking that the service charge they paid were tips so they did not leave additional tips for the service employees." H. Stand. Comm. Rep. 479–00, in 2000 House Journal, at 1155. Thus, H.B. 2123's original focus on employees was expanded to include concern for uninformed consumers. The House Committee on Labor and Employment then deleted the contents of the original H.B. 2123 and inserted the following, as H.B. 2123 H.D. 1:

A BILL FOR AN ACT RELATING TO WAGES AND TIPS OF EMPLOYEES. BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF HAWAII:

SECTION 1. The legislature finds that Hawaii's hotel and restaurant employees may not be receiving tips or gratuities during the course of their employment from patrons because patrons believe their tips or gratuities are being included in the service charge and being passed on to the employees.

The purpose of this Act is to advise customers that the service charge is being used to pay for costs or expenses other than wages and tips of employees.

SECTION 2. Section 481B, Hawaii Revised Statutes, is amended by adding a new section to be appropriately designated and to read as follows:

" § 481B—Service charge. Any hotel or restaurant applying a service charge for the sale of food or beverage services shall distribute the service charge to its employees or else clearly disclose to the purchaser of such services that the service charge is being used to pay for costs or expenses other than wages and tips of employees."

SECTION 3. New statutory material is underscored.

SECTION 4. This Act shall take effect upon its approval.

H.B. 2123, H.D. 1, 20th Leg., Reg. Sess. (2000). The bill went to its second and last House referral, the House Finance Committee, for hearing. Only Anthony Rutledge and other members of Local 5 submitted testimony, and each of them argued that service charges belong wholly to the employee; alternatively, if a portion of the service charge is retained by the employer, the employer must disclose that fact to consumers, who often mistakenly assume that the entire service charge goes to employees.

The House Finance Committee drafted a brief Standing Committee Report indicating that the purpose of the bill was to "prevent unfair and deceptive business practices by requiring hotels or restaurants that apply a service charge for the sale of food or beverage, to disclose to the purchaser that the service charge is being used to pay for costs or expenses other than wages and tips or employees, if the employer does not distribute the service charge to its employees." H. Stand. Comm. Rep. No. 854–00, in 2000 House Journal, at 1298.

The House Finance Committee went on to make what it called "technical, nonsubstantive amendments for purposes of clarity and style" to the bill, id., and drafted H.B. 2123 H.D. 2, which read as follows, with the changes between H.B. 2123 H.D. 1 and H.D. 2 indicated in Ramseyer format:

A BILL FOR AN ACT RELATING TO WAGES AND TIPS OF EMPLOYEES. BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF HAWAII:

SECTION 1. The legislature finds that Hawaii's hotel and restaurant employees may not be receiving tips or gratuities during the course of their employment from patrons because patrons believe their tips or gratuities are being included in the service charge and being passed on to the employees.

The purpose of this Act is to require hotels and restaurants that apply a service charge for food or beverage services, not distributed to employees as tip income, to advise customers that the service charge is

being used for pay for costs or expenses other than wages and tips of employees.

SECTION 2. Section 481B, Hawaii Revised Statutes, is amended by adding a new section to be appropriately designated and to read as follows:

" § 481B—Service charge. Any hotel or restaurant that applies a service charge for the sale of food or beverage services shall distribute the service charge <u>directly</u> to its employees <u>as tip income</u> or [else] clearly disclose to the purchaser of the services that [such] the service charge is being used to pay for costs or expenses other than wages and tips of employees."

SECTION 3. New statutory material is underscored.

SECTION 4. This Act shall take effect upon its approval.

H.B. 2123, H.D. 2, 20th Leg., Reg. Sess. (2000). The legislature considered the addition of the phrase "as tip income" to be "technical [and] nonsubstantive," probably because, as discussed *supra,* the phrase appears merely to serve as the equivalent to "wages and tips of employees." The phrase "as tip income" does not, as Marriott argues, render HRS § 481B–14 ambiguous.

H.B. 2123 H.D.2 passed Third Reading in the House and was transmitted to the Senate, which referred the bill to the Senate Committee on Commerce and Consumer Protection. 2000 Senate Journal, at 301. Local 5 testimony again emphasized that consumers mistakenly assume the entire service charge is paid to employees. DLIR Director Akiba testified in support of the bill, pointing out, "[I]n reference to the term 'tip income' on page 1, line 17, the department would consider the distribution of service charges as 'wages', and not as 'tips' for tip credit purposes under Chapter 387, HRS, Hawaii Wage and Hour Law, and § 12–20–1, Hawaii Administrative Rules."

The Senate Committee on Commerce and Consumer Protection's Committee Report reflected a truly dual purpose (employee wage protection and consumer protection) for H.B. 2123 H.D. 2 towards the end of its path through the legislature as follows:

The purpose of this measure is to enhance consumer protection with respect to service charges imposed by hotels and restaurants on the sale of food and beverages.

. . . .

Your Committee finds that it is generally understood that service charges applied to the sale of food and beverages by hotels and restaurants are levied in lieu of a voluntary gratuity, and are distributed to the employees providing the service. Therefore, most consumers do not tip for services over and above the amounts they pay as a service charge.

Your Committee further finds that, contrary to the above understanding, moneys collected as service charges are not always distributed to the employees as gratuities and are sometimes used to pay the employer's administrative costs. Therefore, the employee does not receive the money intended as a gratuity by the customer, and the customer is misled into believing that the employee has been rewarded for providing good service.

This measure is intended to prevent consumers from being misled about the application of moneys they pay as service charges by requiring under the Unfair and Deceptive Practices Act that a hotel or restaurant distribute moneys paid by customers as service charges directly to its employees as tip income, or disclose to the consumer that the service charge is being used to pay for the employer's costs or expenses, other than wages and tips. . . .

S. Stand. Comm. Rep. No. 3077, in 2000 Senate Journal, at 1286–87. The bill passed Second Reading. 2000 Senate Journal, at 390. H.B. 2123 H.D.2 passed Third Reading, 2000 Senate Journal, at 410, and was later signed into law as Act 16. 2000 Haw. Sess. Laws Act 16, at 21–22.

Throughout H.B. 2123's journey through the legislature, the concern for employees was never abandoned, even when H.B. 2123 was gutted and replaced between H.B. 2123 and H.B. 2123 H.D.1. We have previously recognized that "the legislative history of H.B. 2123 indicates that the legislature was concerned that when a hotel or restaurant withholds a service charge without disclosing

to consumers that it is doing so, <u>both employees and consumers can be negatively impacted.</u>" *Davis*, 122 Hawai'i at 434, 228 P.3d at 314 (emphasis added). The dual focus can also be viewed as a cause-and-effect relationship: the cause (nondisclosure to consumers) has an effect (employees receiving a smaller gratuity than the customer intended). The legislature sought to prevent or mitigate the effect by removing the cause.

Due to the legislature's continued focus on employees' receiving wages and tips, enforcement of a violation of HRS § 481B–14 through Chapter 388 would not be an absurd result that the legislature could not have intended, as the Plaintiffs argue.

### C. Reading HRS § 481B–14 and Chapter 388 in Pari Materia

Alternatively, HRS § 481B–14 and Chapter 388 can be read in pari materia. "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear is one statute may be called in aid to explain what is doubtful in another." HRS § 1–16 (2009). The subject matter of Chapter 388 is "Payment of Wages and Other Compensation." The subject matter of HRS § 388–6 is "Withholding of wages," the subject matter of HRS § 388–10 is "Penalties," and the subject matter of HRS § 388–11 is "Employees['] remedies." Although the title of HRS § 481B–14 is "Hotel or restaurant service charge; disposition," the text of the statute concerns the subject matter "tip income" and "wages and tips of employees." Further, the subject matter of HRS § 481B–14, as it was advancing through the legislature as H.B. 2123, was reflected in its title, "RELATING TO WAGES AND TIPS OF EMPLOYEES."

The title of the bill during the legislative process is, as the Gurrobat amici argue, "constitutionally significant," because according to the Hawai'i Constitution, Article 3, Section 14, "Each law shall embrace but one subject, which shall be expressed in its title." Legislative compliance with this section of the Hawai'i Constitution is "mandatory and a violation thereof would render an enactment nugatory." *Schwab v. Ariyoshi*, 58 Haw. 25, 31, 564 P.2d 135, 139 (1977). As

the Gurrobat amici argue, however, this court should strive to avoid invalidating statutes as unconstitutional whenever a constitutional reading is possible. Further, "[E]very enactment of the legislature is presumptively constitutional," and "to nullify it on the grounds that it was enacted in violation of the subject-title requirements of the State Constitution, the infraction should be plain, clear, manifest, and unmistakable." 58 Haw. at 31, 564 P.2d at 139. An infraction rising to this level is one in which "the title tend[s] to mislead or deceive the people or the [lawmaking body] as to the purpose or effect of the legislation, or to conceal or obscure the same[.]" *Territory v. Dondero*, 21 Haw. 19, 25 (Haw.Terr.1912).

As discussed *supra*, Section IV.B, the title of H.B. 2123, "RELATING TO WAGES AND TIPS OF EMPLOYEES," reflected the legislature's concern for employee compensation, even as the focus of the bill was expanded to provide for prevention of withholding of service charges through consumer disclosure. Thus, under *Schwab* and *Dondero*, the title of H.B. 2123 was sufficient to embrace the subject of the bill as it evolved in the legislature; it was not misleading, deceptive, or obscure in connection to the subject matter of H.B. 2123 in its final iteration.

The Marriott and Starwood Defendants downplay the significance of the title. Marriott argues that the title of H.B. 2123 could not change during the legislative process but "does refer to both consumers and employees" in any event. This argument goes more toward whether the statute was validly enacted (and no party argues that it was not), rather than whether the title of H.B. 2123 assists us in reading HRS § 481B–14 and Chapter 388 in pari materia.

Starwood argues that the title of H.B. 2123 "is but a remnant of the original bill" and not "evidence that [HRS § 481B–14] may be enforced through Chapter 388." *Schwab* makes clear, however, that the title of a bill cannot be considered just a "remnant" of the legislative process; as bills evolve, the title must continue to embrace the subject of the bill, or the bill is nugatory under the Hawai'i

Constitution. Therefore, the legislature could not have validly deleted H.B. 2123's original contents without the replacement content continuing to bear some relation to the title.

Starwood also quotes *Poe v. Haw. Labor Rels. Bd.*, 97 Hawaiʻi 528, 540, 40 P.3d 930, 942 (2002) for the proposition that "the title, policy declarations, and purpose sections of a statute are 'not substantive law,' [and] cannot 'limit or expand the express terms of the operative statutory provisions.'" This quotation is not found in *Poe.* Rather, *Poe* held, "[P]olicy declarations in statutes, while useful in gleaning the purpose of the statute, are not, of themselves a substantive part of the law which can limit or expand upon the operative terms of the operative statutory provisions." 97 Hawaiʻi at 540, 40 P.3d at 942. *Poe* did not discuss titles of bills, and is therefore not applicable on that point.

The Marriott and Starwood Defendants also argue that *Davis* already held that the title of H.B. 2123 is "not dispositive." *Davis* made that point only as to whether the title of H.B. 2123 was dispositive on the issue of employee standing under Chapter 480. The full quote states: "[A]lthough we believe the title is instructive in that it appears to reflect the legislature's concern that employees may not always be receiving the service charges imposed by their employers, we do not believe it is dispositive of the issue of whether the legislature intended to afford Employees standing to sue for HRS § 481B–14 violations." 122 Hawaiʻi at 433 n. 17, 228 P.3d at 313 n. 17. Moreover, this quotation supports the Plaintiffs' point that the subject matter of HRS § 481B–14 is wages and tips of employees, in that this court has already considered the title of H.B. 2123 "to reflect the legislature's concern that <u>employees may not always be receiving the service charges imposed by their employers.</u>" *Id.* (emphasis added).

Lastly, both the Marriott and Starwood Defendants argue that, under *State v. Mata,* 71 Haw. 319, 789 P.2d 1122 (1990), HRS § 481B–14 and Chapter 388 cannot be read in pari materia. *Mata,* however, is distinguishable. In that case, a defendant argued that the definition of "under the influence"

found in the chapter regulating the sale of liquor and liquor establishments should be imported into the statutory offense of driving under the influence of alcohol under HRS § 291–4. 71 Haw. at 330, 789 P.2d at 1128. We disagreed, holding, "HRS Chapter 281 regulates the sale of liquor and liquor establishments. HRS Chapter 291 regulates traffic violations. The chapters serve different purposes and are not in pari materia." *Id.* In the instant proceedings, however, HRS § 481B–14 and Chapter 388 are in pari materia, because both deal with the same subject matter: "tip income" and "wages and tips of employees" in HRS § 481B–14 and "Payment of Wages and Other Compensation" in Chapter 388.

Because HRS § 481B–14 can be read in pari materia with Chapter 388, there exists a relationship among these statutory provisions supporting Plaintiffs' contention that HRS § 481B–14 violations can be enforced through Chapter 388.

### D. Exclusivity of Remedies

In spite of the plain language, legislative history, and in pari materia reading, the Marriott and Starwood Defendants insist that the exclusive remedy for a violation of HRS § 481B–14 lies within the consumer protection chapters (HRS Chapters 480 and 481B). They cite *Davis* for the following proposition: "[T]he legislative history of H.B. 2123 indicates that the legislature was concerned that when a hotel or restaurant withholds a service charge without disclosing to consumers that it is doing so, both employees and consumers can be negatively impacted. <u>The legislature chose to address that concern by requiring disclosure and by authorizing enforcement of that requirement under HRS chapter 480.</u>" 122 Hawaiʻi at 434, 228 P.3d at 314 (emphasis added). However, *Davis* left unanswered the question of whether violations of HRS § 481B–14 are also enforceable through Chapter 388. *See* 122 Hawaiʻi at 428 n. 12, 228 P.3d at 308 n. 12. ("Employees also contend that Employees can enforce HRS § 481B–14 through HRS §§ 388–6, 10, and 11. However, this argument will not be addressed because it is beyond the scope of the certified question.")

The plain language of Chapters 480 and 481B does not indicate that remedies therein are exclusive. The legislature knows how to craft an exclusivity provision. *See, e.g.,* HRS § 103D–704 (2012)("**Exclusivity of remedies.** The procedures and remedies provided for in this part, and the rules adopted by the policy board, shall be the exclusive means available for persons aggrieved in connection with the solicitation or award of a contract, a suspension or debarment proceeding, or in connection with a contract controversy, to resolve their claims or differences...."). No such exclusivity provision appears in the relevant enforcement statutes in the consumer protection area. HRS § 481B–4 (2008) provides, "Remedies. Any person who violates this chapter shall be deemed to have engaged in an unfair method of competition and unfair or deceptive act or practice in the conduct of any trade or commerce within the meaning of section 480–2." HRS § 480–2(e) (2008), in turn, allows "[a]ny person [to] bring an action based on unfair methods of competition declared unlawful by this section." Contrary to the Marriott and Starwood Defendants and Four Seasons amicus' argument, nothing in these statutes states that Chapter 480 remedies are exclusive.

The Marriott and Starwood Defendants also argue that the legislature's decision to shift H.B. 2123's focus from a bill proposing amendments to Chapters 387 and 388 to a bill proposing to add a new section within Chapter 481B indicates the legislature's intent that the remedy under the consumer protection chapters be exclusive. However, nothing in the legislative history of H.B. 2123 limits or even discusses remedies. Further, the Marriott and Starwood Defendants have provided no case law or other authority holding that the mere placement of a law within one chapter of the HRS implies the exclusion of remedies found in other chapters.

On the other hand, the Gurrobat amici have cited *Zator v. State Farm Mut. Auto. Ins. Co.,* 69 Haw. 594, 597, 752 P.2d 1073, 1075 (1988) for the proposition that this court "cannot presume that the legislature intended a discriminatory and illogical policy" that a statute located in one chapter of the HRS

should not apply to a statute located in another chapter of the HRS. In that case, on a question certified to us by the United States Court of Appeals for the Ninth Circuit, we applied the tolling provision from the chapter on statutes of limitations (Chapter 657) to the no-fault limitations period set forth in the chapter governing motor vehicle accident reparations (then Chapter 294). 69 Haw. at 595, 597, 752 P.2d at 1074, 1075. This was because HRS § 294–36 was "silent as to whether it is tolled if the person entitled to bring the suit is rendered insane on account of the accident," but the "general tolling provisions for statutes of limitations set forth in HRS § 657–13 provides for tolling of the statute in cases of insanity." 69 Haw. at 597, 752 P.2d at 1075.

We considered there to be an ambiguity in the law, which we resolved by construing the two statutes in pari materia, ascertaining legislative intent, and looking to the policies behind the statutes. *Id.* We concluded that the legislature could not have intended "a discriminatory and illogical policy" of allowing the tolling of the general statute of limitations for insane plaintiffs but disallowing the tolling of the no-fault statute of limitations. *Id.* We also favorably cited another case, *Hun v. Center Properties,* 63 Haw. 273, 626 P.2d 182 (1981), in which we held that HRS § 657–13 tolled the wrongful death statute of limitations found in another chapter (Chapter 663) because "the two-year statute of limitations period merely affects the remedy and not the right of action." Similarly in this case, allowing enforcement under Chapter 388 affects the remedy, not the right set forth in HRS § 481B–14.

It bears noting that the Plaintiffs argue that HRS § 480–13(d) (2008) provides that the remedies in Chapter 480 are "cumulative." That statutory sub-section reads in whole, however, "The remedies provided in <u>this section</u> are cumulative and may be brought in one action." (Emphasis added). "This section" refers to HRS § 480–13(d), not statutes outside of that section, and is of no help to Plaintiffs. Further, the Plaintiffs have cited *E. Star Inc., S.A. v. Union Bldg. Materials Corp.,* 6 Haw.App. 125, 142, 712 P.2d 1148, 1159 (1985) to support their argu-

ment that Chapter 480 remedies are cumulative, but that case held only that Chapter 480 remedies "do not supersede common law fraud claims based on deception in the course of trade and commerce," which are remedies very different from those under Chapter 388. Although Chapter 480's remedies are not expressly "cumulative," and although case law has yet to establish that they include Chapter 388 remedies, the bottom line is that Chapter 480 remedies are not "exclusive" either; therefore, nothing in the statutory plain language or legislative history of HRS § 481B–14 precludes enforcement of HRS § 481B–14 violations through Chapter 388.

## V. Conclusion

For the foregoing reasons, we answer the certified question in the affirmative. When a hotel or restaurant applying a service charge for the sale of food or beverage services allegedly violates HRS § 481B–14 by (1) not distributing the full service charge directly to its employees as "tip income" (in other words, as "wages and tips of employees"), and by (2) failing to disclose this practice to the purchaser of the services, the employees

1.  HRS § 481B–14 provides as follows:

    **§ 481B–14 Hotel or restaurant service charge; disposition**
    Any hotel or restaurant that applies a service charge for the sale of food or beverage services shall distribute the service charge directly to its employees as tip income or clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees.
    (Emphasis added).

2.  HRS § 481B–4 provides as follows:

    **§ 481B–4 Remedies**
    Any person who violates this chapter shall be deemed to have engaged in an unfair method of competition and unfair or deceptive act or practice in the conduct of any trade or commerce within the meaning of section 480–2.
    (Emphases added).

3.  HRS § 480–2 provides in relevant part as follows:

    **§ 480–2 Unfair competition, practices, declared unlawful**
    (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.
    . . .
    (d) No person other than a consumer, the attorney general, or the director of the office of consumer protection may bring an action

may bring an action under HRS §§ 388–6,–10, and–11 to enforce the employees' rights and seek remedies.

Concurring and Dissenting Opinion by ACOBA, J., with whom Circuit Judge CHAN, joins.

I reaffirm that because a violation of Hawai‘i Revised Statutes (HRS) § 481B–14 (Supp.2000)[1], which requires that a hotel or restaurant service charge be distributed to employees as tip income or that the contrary be disclosed to consumers, is "deemed" to be an unfair method of competition (also UMOC herein) under HRS § 481B–4 (Supp.2008),[2] and thus "unlawful" under HRS § 480–2 (Supp.2002),[3] employees as injured "persons" and consumers may sue for damages pursuant to HRS § 480–13 (Supp.2005),[4] without alleging any anti-competitive effect of the violation.[5] *Davis v. Four Seasons Hotel Ltd.*, 122 Hawai‘i 423, 447–49, 228 P.3d 303, 327–29 (2010) (Acoba, J., dissenting).

Respectfully, the majority decision of this court in *Davis* contravened the legislature's

based upon unfair or deceptive acts or practices declared unlawful by this section
(e) Any person may bring an action based on unfair methods of competition declared unlawful by this section.
(Emphasis added).

4.  HRS § 480–13 provides in relevant part as follows:

    **§ 480–13 Suits by persons injured; amount of recovery; injunctions**
    (a) Except as provided in subsections (b) and (c), any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter:
    (1) May sue for damages sustained by the person and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater . . . .
    (Emphases added).

5.  As discussed *infra*, I believe that the legislature intended that employees and other persons would vindicate their rights under HRS § 481B–14 through chapter 480. A suit under chapter 388 may be available because under *Davis*, employees would otherwise be precluded from enforcing HRS § 481B–14. I therefore concur that violations of HRS § 481B–14 can be asserted by employees in an action under HRS §§ 388–6, 388–10, and 388–11 if they choose to do so.

intention to allow enforcement of HRS § 481B–14 through HRS § 480–2(e). *See Davis,* 122 Hawai'i at 449, 228 P.3d at 329 (Acoba, J., dissenting) ("The majority's construction of HRS § 481B–4 deprives the statute of its force and undermines the legislature's manifest intent in enacting the law."). That holding resulted in the perceived "impossibility" of enforcing violations of HRS § 481B–14 through HRS § 480–2(e). *Villon v. Marriott Hotel Servs., Inc.,* 2011 WL 4047373, at *10 (D.Haw. Sept. 8, 2011) (Kobayashi, J.).

### I.

The plain language of HRS § 481B–4 provides that "any person who violates [HRS § 481B–14] shall be deemed to have engaged in an unfair method of competition . . . within the meaning of [HRS § ] 480–2." (Emphasis added.) Nevertheless, *Davis* held that a plaintiff must also allege "the nature of the competition" to successfully sue for violations of HRS § 481B–14 through HRS § 480–2. *Davis,* 122 Hawai'i at 437, 228 P.3d at 317. As Plaintiff–Appellants Bert Villon and Mark Apana (Plaintiffs) and Amici Curiae Raymond Gurrobat, Loretta Chong, Marti Smith, Jonalen Kelekoma, and Darren Miyasato (Amici) demonstrate, this holding has precluded plaintiffs' utilization of HRS §§ 480–2 and 480–13 to enforce HRS § 481B–14.[6]

### II.

### A.

HRS § 481B–14 provides that a hotel or restaurant must either distribute service charges to employees or disclose to consumers that it is not doing so. Thus, when a hotel or restaurant (1) does not distribute service charges directly to employees, and (2) does not disclose to consumers that the service charge is not used to pay the wages and tips of employees, it "violates" HRS § 481B–14. See *Davis,* 122 Hawai'i at 447, 228 P.3d at 327 (Acoba, J., dissenting).

HRS § 481B–4 is clear and unambiguous. HRS § 481B–4 provides that "[a]ny person who violates this chapter [HRS chapter 481B] shall be deemed to have engaged in an [UMOC] and unfair or deceptive act or practice [also UDAP herein] in the conduct of any trade or commerce within the meaning of section 480–2." (Emphases added.) The word "deem" has been defined as, *inter alia* "to treat [something] as (1) if it were really something else," or "(2) it has qualities that it does not have." *Davis,* 122 Hawai'i at 448, 228 P.3d at 328 (Acoba, J, dissenting) (quoting *Black's Law Dictionary* 477–78 (9th ed. 2008)).

Hence, "deem" " 'has been traditionally considered to be a useful word when it is necessary to establish a legal fiction either positively by deeming something to be what it is not or negatively by deeming something not to be what it is.' " *Id.* (quoting *Black's Law Dictionary* 447–78) (emphasis in original). HRS § 481B–4 provides that it is " 'deemed,' " i.e., "established" that a violation of chapter HRS chapter 481B, and hence, of HRS § 481B–14, is an " 'unfair method of competition and unfair or deceptive act or practice.' " *Id.* (emphasis added). Consequently, "HRS § 481B–4 renders a violation of HRS § 481B–14, in and of itself, both a UDAP and UMOC." *Id.*

In tandem with HRS § 481B–14, HRS § 480–2(a) provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." (Emphasis added.) The remedy for such unlawful competition is set forth in HRS §§ 480–2(d) and 480–2(e). Under HRS § 480–2(d), "no person other than a consumer, the attorney general, or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section." On the other hand, HRS § 480–2(e) provides that "any person may bring an action based on unfair methods of

---

**6.** According to Plaintiffs and Amici, the deviation from the plain language of HRS § 481B–14 has resulted in dismissal of claims seeking to enforce HRS § 481B–14 through HRS §§ 480–2 and 480–13 by Judges Gillmor, Kay, Ezra, and Kobayashi of the Federal District Court and Judge

Sakamoto of the First Circuit Court. With the exception of Judge Kobayashi, however, those Judges have allowed plaintiffs to enforce violations of HRS § 481B–14 through HRS § 388–6. This case is here because Judge Kobayashi, who held otherwise, certified this question for review.

competition declared unlawful by this section." (Emphasis added.) As discussed *supra,* under HRS § 481B–4 it is established then that a violation of HRS § 481B–14 is a UMOC and a UDAP.

Under HRS § 480–2(d) then, a suit for a violation of HRS § 481B–14 may be brought by a consumer, the attorney general, or the director of the Office of Consumer Affairs as a UDAP. *Davis,* 122 Hawai'i at 449, 228 P.3d at 329 (Acoba, J., dissenting) In contrast, "any person" is entitled to bring a UMOC action. *Id.* As defined in HRS § 480–1, "person" includes "individuals." *Id.* Employees are not "consumers" and therefore cannot bring an UDAP action under HRS § 480–2(d). *Id.* However, an employee, as an individual, qualifies as "any person" under HRS § 480–2(e). Therefore, the explicit command of HRS § 480–2 provides that violations of HRS § 481B–14 are "unlawful" and that employees, as "person[s]," may bring an action to enforce HRS § 481B–14 on this basis. Hence, allowing employees to bring an action as "persons" under HRS § 480–2(e) would make resort to HRS chapter 388 unnecessary.

Finally, HRS § 480–13 provides that "any person who is injured in the person's business or property by reason of anything forbidden in the chapter [i.e., HRS § 480–2]" may sue for damages, and receive, *inter alia,* "threefold damages by the plaintiff sustained[.]" The language of HRS § 480–13 of "permitting a suit based on injuries to 'business or property' manifestly includes the economic loss of withheld tip income." *Davis,* 122 Hawai'i at 450, 228 P.3d at 330 (Acoba, J., dissenting). Based on the foregoing, a violation of HRS § 481B–14 is manifestly a UMOC, and therefore "unlawful" under HRS § 480–2. HRS § 480–13 consequently grants employees as persons, the right to sue for treble damages under HRS § 480–13 for violations of HRS § 481B–14 based on the improper withholding of tip income.

In sum, the statutory language of HRS § 481B–4 and HRS § 481B–14 plainly mandates that a violation of HRS § 481B–14 is "deemed" a UMOC, without requiring additional proof, and plaintiffs may therefore receive treble damages under HRS § 480–13

on evidence that HRS § 481B–14 was violated. "It is a cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all the words of the statute." *Davis,* 122 Hawai'i at 449, 228 P.3d at 329. (Acoba, J., dissenting) (internal quotation marks omitted).

"In order to give full effect to HRS § 481B–4, the phrase 'shall be deemed' " must be construed as establishing a UMOC violation. *Id.* The drafters of HRS § 481B–4 did not insert conditional language or provide any additional limitations on access to the remedies in HRS § 480–13 after a "deemed" UMOC violation is proved. *Id.* Rather, the statutory text evinces an intent to allow those who have suffered a violation under HRS § 481B–14 a cause of action to enforce their rights under HRS § 480–13. *Id.*

B.

The legislative history of HRS § 481B–14 further supports allowing employees to recover for damages once an employer's conduct is "deemed" a UMOC under HRS § 480–2. In considering the legislative history of HRS § 481B–14, this court has concluded that the statute was enacted because "the legislature was concerned that when a hotel or restaurant withholds a service charge without disclosing to consumers that it is doing so, both employees and consumers can be negatively impacted." *Davis,* 122 Hawai'i at 434, 228 P.3d at 314 (emphasis added); *see also Davis,* 122 Hawai'i at 459, 228 P.3d at 339 (Acoba, J., dissenting) ("[T]he legislative history of [HRS § ] 481B–14 demonstrates that the legislature was not simply concerned with the anti-competitive effect of the conduct on consumers and businesses, but, rather, took into account the direct effect of such conduct on employees.") (emphasis in original); majority opinion at 139–40, 306 P.3d at 184–85 (noting that the legislative history of HRS § 481B–14 reflected "truly a dual purpose," i.e., "employee wage protection and consumer protection"). Thus, regardless of

the effect of those practices on competition, HRS § 481B–14 was intended to protect employees and consumers from practices the legislature had already "deemed" to be unfair. Allowing actions under HRS § 480–13 for injuries suffered as a result of HRS § 481B–14 violations promotes this purpose by allowing employees and consumers to sue for damages.

### III.

Despite the apparent clarity of the statutory scheme, *Davis* imposed an additional requirement not found in the statute or suggested in the legislative history on plaintiffs seeking to enforce HRS § 481B–14 though HRS § 480–13. First, according to *Davis,* this court in *Hawai'i Medical Ass'n v. Hawai'i Medical Service Ass'n,* 113 Hawai'i 77, 148 P.3d 1179 (2006) (*HMA*) held that the "nature of the competition" must be alleged in UMOC cases. *Davis* further asserted that the requirement that the "nature of the competition" be alleged was derived from language in HRS § 480–13 that states, "any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter," i.e., "the causation requirement." *Id.* at 438–39, 228 P.3d at 318–19.

However, reliance on *HMA* was misplaced for two reasons. First, the requirement in *HMA* that the "nature of the competition be alleged" is limited to circumstances where a plaintiff brings a UMOC action for claims that would also constitute a UDAP. *See Davis,* 122 Hawai'i at 453, 228 P.3d at 333 (Acoba, J., dissenting). Second, assuming arguendo that the "nature of the competition" requirement applies when a plaintiff does not rely on UDAP claims, it nevertheless would not apply to conduct that is already "deemed" a UMOC. Therefore, *HMA* is inapplicable to claims brought under HRS § 481B–14.

### A.

In *HMA*, the plaintiffs were physicians who alleged that the defendant *HMSA,* had engaged in unfair or deceptive acts or practices by refusing to reimburse physicians for necessary medical services. 113 Hawai'i at

111, 148 P.3d at 1213. The plaintiffs argued, *inter alia,* that these allegations could be used to support their UMOC claim. *Id.* The circuit court concluded, however, that although the plaintiffs were asserting UMOC claims, the claims were actually UDAP claims, and consequently dismissed the action. *Id.; see also Davis,* 122 Hawai'i at 454, 228 P.3d at 334 (Acoba, J., dissenting).

This court vacated the dismissal. *HMA* explained that "plaintiffs may bring claims of UMOC based on conduct that would also support claims of UDAP." However, it held that "the nature of the competition must be sufficiently alleged." *HMA,* 113 Hawai'i at 111, 148 P.3d at 1213. This was because without such allegations, "the distinction between claims of unfair and deceptive acts or practices and claims of unfair methods of competition that are based upon such acts or practices would be lost where both claims are based on unfair deceptive acts and practices." *Id.* at 435, 228 P.3d at 333. (emphasis added).

Hence, in *HMA* this court required the plaintiffs to allege the "nature of the competition" to preserve the distinction between UMOC claims and UDAP claims. *See Davis,* 122 Hawai'i at 454, 228 P.3d at 334 (Acoba, J., dissenting) (explaining that the "pleading requirement interposed [by *HMA*] between UDAP and UMOC" was "necessitated in situations where they share a commonality"). In suits for violations of HRS § 481B–14, however, plaintiffs are not attempting to bring a UMOC claim on the basis of conduct that would ordinarily constitute a UDAP. Instead, HRS § 481B–4 establishes that any violation of HRS § 481B–14 is both a UMOC and a UDAP. Hence, in suits for violations of HRS § 481B–14, "there is no requirement or need to distinguish between unfair methods of competition and unfair and deceptive acts that may also constitute unfair methods of competition." *Davis,* 122 Hawai'i at 453, 228 P.3d at 333 (Acoba, J., dissenting). Therefore, *HMA* is inapposite.

### B.

Assuming, arguendo, that "nature of the competition" is ordinarily an element that must be pled and proved to recover under a

UMOC claim, that requirement is inapplicable to violations of HRS § 481B–14, which are "deemed" to be a UMOC. In *HMA*, the issue before this court was what must be alleged to "bring a claim of unfair methods of competition." 113 Hawai'i at 113, 148 P.3d at 1215 (emphasis added). *HMA* explained that plaintiffs "may rely upon [ ] alleged unfair or deceptive acts or practices to support their claims of unfair methods of competition," *id.* at 111, 148 P.3d at 1213, provided that "the nature of the competition" was also "alleged." *Id.* In other words, under the circumstances of *HMA*, pleading "the nature of the competition" was necessary to the existence of a UMOC.

*HMA* was significantly different from *Davis* and the instant case, in which HRS § 481B–4 provides that a violation of HRS § 481B–14 shall be deemed a UMOC. Thus, the failure of a hotel or restaurant to disclose whether employees receive the service charge itself substantiated the existence of a UMOC. Giving the statutory language its plain meaning as we must, it would be violative of HRS § 481B–14 to conclude a plaintiff must allege and prove an element foreign to the statutory language. *See Davis*, 122 Hawai'i at 448–49, 228 P.3d at 328–29. In other words, under HRS § 481B–4, it is unnecessary to allege anything further—including the "nature of the competition"—to show

that a breach of HRS § 481B–14 is a UMOC. As a result, the reasoning in *HMA*, which did not address the "deemed" language in HRS § 481B–4, is inapposite to this case.

IV.

No authority from this jurisdiction[7] supports the proposition that the "nature of the competition" allegation is derived from HRS § 480–13. *See Davis*, 122 Hawai'i at 438–39, 228 P.3d at 318–19. *Davis* relied solely on federal cases[8] that stated a plaintiff must allege that his or her injury "'reflect[s either] the anti-competitive effect either of the violation or of [the] anti-competitive acts made possible by the violation'" in order to obtain standing under the federal equivalent of HRS § 480–13. *Davis*, 122 Hawai'i at 445, 228 P.3d at 325 (quoting *Brunswick*, 429 U.S. at 489, 97 S.Ct. 690); *see also Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990). According to *Davis*, this requirement was "consistent" with "the Hawai'i requirement that a plaintiff allege the nature of the competition." *Davis*, 122 Hawai'i at 445, 228 P.3d at 325. However, the reasoning of the federal cases suggests that the language cited by *Davis* was not intended to apply when, as in this case, the purposes of the statute violated by the defendant are broader than the protection of competition.

---

7. This court in *HMA* did hold that the "nature of the competition" must be alleged to establish a UMOC claim under the limited circumstances discussed *supra*. However, *HMA* did not hold that the requirement that the "nature of the competition" be pled stemmed from the injury requirement in HRS § 480–13. To the contrary, this court in *HMA* discussed those requirements as two distinct propositions:

In sum, we hold that any person may bring a claim of unfair methods of competition based upon conduct that could also support a claim of unfair or deceptive acts or practices as long as the nature of the competition is sufficiently alleged in the complaint. Accordingly, we hold that the circuit court erred in concluding that the plaintiffs' post-June 28, 2002 claims are barred.

However, inasmuch as the circuit court's May 23, 2003 orders differed in one respect—that is, in the HMA Appeal case, the circuit court additionally concluded that HMA had failed to show injury for its claim of unfair methods of competition—we turn now to address the sufficiency of HMA's allegations of injury.

*HMA*, 113 Hawai'i at 113, 148 P.3d at 1215 (emphases added).

8. *Davis* also cited footnotes in *HMA* and *Robert's Hawai'i School Bus, Inc. v. Laupahoehoe Transportation Co.*, 91 Hawai'i 224, 982 P.2d 853 (1999). However, those footnotes merely note that "federal case law has interpreted the 'injury to business or property' language of section 4 as a causation requirement, requiring a showing of 'antitrust injury.' 'Plaintiffs must prove an injury of the type the antitrust laws were intended to prevent....'" *Robert's Hawai'i*, 91 Hawai'i at 254 n. 31, 982 P.2d at 863 n. 31 (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)); accord *HMA*, 113 Hawai'i at 114 n. 30, 148 P.3d at 1216 n. 30. Neither *HMA* nor *Robert's Hawai'i* construed the injury requirement in HRS § 480–13 as requiring a plaintiff to prove the "nature of the competition." *See HMA*, 113 Hawai'i at 114, 148 P.3d at 1179 ("HMA need only allege that, by reason of an antitrust violation, it has been injured in its 'business or property.'").

**148**

## A.

In *Brunswick,* the defendant was "by far the largest operator of bowling centers" in the United States, and had acquired several bowling centers that would have otherwise gone out of business. 429 U.S. at 480, 97 S.Ct. 690. The plaintiffs alleged defendant had violated section 7 of the Clayton Act because its acquisition of failing bowling centers might "substantially lessen competition or tend to create a monopoly." *Id.* The plaintiffs filed suit under section 4 of the Clayton Act, on which HRS § 480–13 is modeled.[9] In relevant part, section 4 provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor." 15 U.S.C. § 15.

The Supreme Court characterized the plaintiffs' claims as "complain[ing] that by acquiring the failing centers [the defendant] preserved competition, thereby depriving [the plaintiffs] of the benefits of increased concentration." *Brunswick,* 429 U.S. at 488, 97 S.Ct. 690 (emphasis added). *Brunswick* rejected the plaintiffs' claims that they were injured because they were compelled to compete with the defendant. *Id.* It was "quite clear" that the plaintiffs "were not injured by reason of anything forbidden in the antitrust laws." *Id.*

The Supreme Court held that to recover for a section 4 violation, the plaintiffs "must prove antitrust injury, which is to say the type of injury the antitrust laws were intended to prevent and that flows from that which makes defendant's actions unlawful." *Id.* at 489, 97 S.Ct. 690 (emphasis added). This reasoning was reaffirmed in *Atlantic Richfield,* which held the same proposition applied in order to obtain damages under section 4 of the Clayton Act. *Atlantic Richfield,* 495 U.S. at 334, 110 S.Ct. 1884 (citing *Brunswick,* 429 U.S. at 488, 97 S.Ct. 690) (emphasis added).

Based on the foregoing, some federal courts interpreting *Brunswick* and *Atlantic Richfield* have concluded that the "fundamental rule" from those cases is simply "that the court must 'ensure that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place.'" *In Town Hotels Ltd. v. Marriott Int'l Inc.,* 246 F.Supp.2d 469, 476 (S.D.W.Va.2003) (quoting *Atlantic Richfield,* 495 U.S. at 342, 110 S.Ct. 1884) (internal brackets removed). Hence, when an action under section 4 of the Clayton Act is based on a statute whose purpose transcends the protection of competition, a plaintiff is only required to confirm that the injury corresponds to the purpose or rationale of the statute involved. *Cf. id.* For example, in *Town Hotels,* the district court determined that the "rationale behind the particular antitrust provision at issue" was, *inter alia,* the prevention of harms to individuals arising from commercial bribery. *Id.* at 476, 480. *Town Hotels* held that the plaintiffs could establish "antitrust injury" by showing that the harm they suffered was caused by commercial bribery. *Id.* Because the rationale underlying the statute at issue was not the protection of competition, *see id.* at 476, the plaintiffs were not required to substantiate the anticompetitive effect of the violation. *Id.* at 481.[10]

## B.

The proposition in *Davis* that a plaintiff in a HRS § 481B–14 action must prove the anticompetitive effect of an antitrust violation was premised on the Supreme Court's conclusion that the purpose of the federal antitrust laws was the protection of competition. *Davis,* 122 Hawai'i at 439, 228 P.3d at 319. However, the purposes of HRS § 481B–14 are broader. To reiterate, the legislature's purpose in enacting HRS § 481B–14 was to protect both consumers and employees from the injury suffered

9. *See, e.g., Davis,* 122 Hawai'i at 444, 228 P.3d at 324 ("HRS § 480–13 tracks the language of section 4 of the Clayton Act.").

10. *See also Edison Elec. Institute v. Henwood,* 832 F.Supp. 413, 418–19 (D.D.C.1993); *Municipality of Anchorage v. Hitachi Cable, Ltd.,* 547 F.Supp. 633, 640 (D.Alaska 1982); *cf. Blue Tree Hotels Inv. (Can.) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212 (2d Cir.2004) (abrogating a district court decision holding that a plaintiff must allege an anticompetitive effect to show antitrust injury).

when a business retains the service charge for itself but does not inform consumers of this practice. The legislature manifested concerns that the result of this retention is to deny employees the tip income that they would have otherwise received from consumers. *See Davis,* 122 Hawai'i at 459, 228 P.3d at 339 (Acoba, J, dissenting) (noting that according to the legislature, "'the problem lies with consumers who <u>may not leave tips for the service employees,</u> mistakenly thinking that the service charges they paid were tips, <u>so they did not leave additional tips for service employees.</u>'") (emphases in original) (quoting H. Stand. Comm. Rep. No. 479–00, in 2000 House Journal, at 1155).

In light of the dual purpose of HRS § 481B–14 and the determination by the legislature that a violation of HRS § 481B–14 is deemed unlawful within the meaning of HRS §§ 480–2, a showing of anticompetitive effect is inapplicable to suits under HRS § 481B–14. *Cf. Town Hotels,* 246 F.Supp.2d at 476 (concluding that the language in *Brunswick* and *Atlantic Richfield* regarding anticompetitive effect is "not relevant" when the purposes of the antitrust law at issue go beyond the protection of competition). As pointed out before, reliance on the language in *Brunswick* that plaintiffs must prove the "anti-competitive effect of a violation" overlooked the reality that "federal precedent does not contain any analogous provision to HRS § 481B–4 and 481B–14 <u>or reflect the same concerns.</u>" *Davis,* 122 Hawai'i at 459, 228 P.3d at 339 (Acoba, J, dissenting) (emphasis added).

## V.

Hawai'i courts have decided that *Davis* effectively precluded enforcement of violations of HRS § 481B–14 through HRS §§ 480–2 and 480–13. In their Opening Brief, Plaintiffs contend that as a result of *Davis,* enforcement of HRS § 481B–14 though HRS § 480–2 is no longer "viable." Plaintiffs point out that "judges in both the federal and state courts have interpreted [*Davis* ] as requiring proof of predatory pric-

ing that has a negative effect on competition—a burden of proof that no plaintiff could prove in cases such as this, which seek to recover unpaid portions of service charges." Therefore, "every judge to address claims brought under §§ 480–2 and 480–13 for violations of § 481B–14 [has] dismissed those claims, either for want of proof or as inadequately alleged."

Similarly, Amici note that *Davis* "is being applied in the lower courts to require wage earners to prove impossible antitrust theories of market injury." According to Amici, hotels have "thus far argued successfully in the lower courts" that under *Davis,* "neither hotel employees nor consumers can effectively recover under HRS § 481B–14." "[N]ot a single employee's claim under [c]hapter 480 has survived the dispositive motions stage, and one of the two pending consumer cases resulted in a judgment for the hotel under [c]hapter 480." [11]

## A.

In cases brought under HRS § 481B–14, plaintiffs have attempted to allege the "nature of the competition" by arguing that a restaurant or hotel may "'reduce the published cost of its food and beverages by improperly profiting from the imposition of a non-disclosed service charge.'" *See, e.g., Rodriguez v. Starwood Hotels & Resorts Worldwide, Inc,* CV. No. 09–00016 DAE-LEK, slip. op. at 45, 2010 WL 8938524 (D.Haw. Dec. 29, 2010) (Ezra, J.). However, under the federal standard, if the only effect is that a defendant may charge lower prices, the plaintiff must allege that the pricing is predatory in order to demonstrate an "anticompetitive effect." *See Atlantic Richfield,* 495 U.S. at 339–40, 110 S.Ct. 1884 ("Antitrust injury does not arise ... until a private party is adversely affected by an anticompetitive aspect of the defendant's conduct ... in the context of pricing practices, only predatory pricing has the requisite anticompetitive effect."). This is because "'cutting prices in order to increase business often is the very essence of competition.'" *Matsushita Elec.*

11. Amici do note, however, that judgement was entered for the consumers in the other case in state circuit court.

*Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 594, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Low prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition." *Atlantic Richfield,* 495 U.S. at 340, 110 S.Ct. 1884. Therefore, low prices "cannot give rise to antitrust injury." *Id.*

## B.

Judge Kobayashi, addressing the HRS § 481B–14 claim in this case, stated that "the chapter 480 claim is virtually impossible to prove." *Villon,* 2011 WL 4047373 at *10. Similarly, in *Rodriguez,* Judge Ezra stated that "to satisfy the 'nature of the competition' requirement, a plaintiff must demonstrate that its injury 'stems from the negative effect on competition caused by [a defendant's] violation' to ensure that it does not stem from 'some pro-competitive or neutral effect of the defendant's antitrust violation.'" *Id.* at 47 (quoting *Davis,* 122 Hawai'i at 440, 445, 228 P.3d at 320, 325) (emphasis in original). Judge Ezra held that the plaintiffs failed to allege how their injury, or, that "the percentage of the service charge withheld" was the result of "the negative effect of competition, the advantage [d]efendant improperly gains over other hotels and restaurants." *Id.; see also Wadsworth v. KSL Grant Wailea Resort,* Inc., 818 F.Supp.2d 1240, 1267 (D.Haw. 2010) (Kay, J.) (noting that "if the only effect on competition that Plaintiffs allege is lower prices, they must show that those lower prices are predatory").

Relying on similar reasoning, other courts have dismissed or cast doubt on plaintiffs' efforts to enforce HRS § 481B–14 through HRS §§ 480–2(e) and 480–13. *See, e.g., Wadsworth,* 818 F.Supp.2d at 1267 (Kay, J.) (noting that "if the only effect on competition that Plaintiffs allege is lower prices, they must show that those lower prices are predatory" and holding that "the allegations in Paragraph 14 are insufficient to allege the nature of the competition as required by the court in *Davis*"); *Kyne v. Ritz–Carlton Hotel Co.,* 835 F.Supp.2d 914, 930 (D.Haw.2011) (Kay, J.) (rejecting arguments that the defendant "has gained an unfair competitive advantage over competitor hotels" by "[r]educing the published cost of its food" and that employees and hotels "compete for the amount customers are willing to pay for food and beverage services"); *Davis v. Four Seasons Hotel Ltd.,* 2011 WL 5025521, at *4 (D.Haw. Oct. 20, 2011) (Gillmor, J.) (dismissing HRS § 480(e) claim because "employees must show that the defendant's violation had a negative effect on competition").

Finally, plaintiffs have attempted to argue that competition was harmed because they were in competition with the hotels that employed them for service charges or tips. This argument was rejected because "[p]laintiffs do not provide any case law or support for the proposition that employees can compete with their employers for gratuity." *Rodriguez,* slip. op. at 48. "Indeed, the common law of Hawai'i suggests that employees have a duty <u>not</u> to compete with their employers." *Id.* (emphasis in original) (citing *Eckard Brandes, Inc. v. Riley,* 338 F.3d 1082, 1085 (9th Cir.2003)). Therefore, Judge Ezra rejected this contention as well and dismissed the HRS § 481B–14 counts of the plaintiffs' complaint for the failure to state a claim. Thus, it is apparent that employees have not been able to satisfy the requirement that they allege "the nature of the competition."

## VI.

But, as discussed *supra,* the requirement that plaintiffs allege an "anticompetitive effect" of a HRS § 481B–14 violation is unsubstantiated by the authorities cited by *Davis.* Under a proper construction of HRS §§ 480–2, 480–13, 481B–4, and 481B–14, it is only necessary to confirm that HRS § 481B–14 was violated. Because the statutory scheme manifestly provides that violations of HRS § 481B–14 are "deemed" a UMOC under HRS § 480–2, employee plaintiffs should be able to recover for resulting injury pursuant to HRS § 480–13. Viewing HRS § 480–13 as a "causation requirement" that mandates plaintiffs to allege "the nature of the competition" renders the term "deemed" superfluous. Under the statutory framework, the drafters of HRS § 481B–14 intended to allow plaintiffs access to the remedies in HRS

§ 480–13 once a violation of HRS § 481B–14 was found.

In effect, *Davis* nullified the word "deemed" in HRS § 481B–4. Respectfully, *Davis* also wrongly imported federal antitrust law into HRS § 481B–14. This essentially decreed that the purpose of HRS § 481B–14 was to promote competition, even though the purposes of HRS § 481B–14 were broader. As a result, *Davis* established barriers to the enforcement of HRS § 481B–14 through HRS § 480–13. *See Davis*, 122 Hawai‘i at 458, 228 P.3d at 338 (Acoba, J., dissenting) (stating that it is "incongruous to assert ... that in addition to alleging injury for an already per se violation of HRS § 480–2(e), [p]laintiffs must also allege 'actual damage caused by anti-competitive conduct'").

### VII.

Significantly, under the reasoning in *Davis*, consumers also would be categorically precluded from suing for violations of HRS § 481B–14. The requirement that the "nature of the competition" be alleged arguably applies to <u>all</u> suits seeking damages under HRS § 480–13, and consequently would equally bar attempts by consumers to enforce HRS § 481B–14. As a result, consumers would be required to demonstrate that the conduct of the hotels or restaurants "negatively affects competition."

The holding on the certified question allows employees to enforce violations of HRS § 481B–14 through HRS §§ 388–6, 388–8, and 388–10. However, the same statutory option is not available to consumers. As reiterated before, the legislature intended HRS § 481B–14 to protect both consumers and employees. Therefore, consumers, like employees, are entitled to the remedies afforded them under HRS § 481B–4 for a violation of HRS § 481B–14, without having to allege any anticompetitive effect of the violation.

### VIII.

The difficulties faced by employees and consumers in successfully vindicating violations of HRS § 481B–14 under HRS §§ 480–2 and 480–13 are the result of the requirement that they demonstrate the "nature of the competition" in suits under HRS §§ 480–2 and 480–13. Construed to require plaintiffs to demonstrate the predatory effect of such competition, this directive conflicts with the plain language of HRS §§ 481B–4, 480–2 and 480–13, and undermines the expressed legislative intent that HRS § 481B–14 protect employees and consumers. The proper construction of HRS §§ 481B–4 and 481B–14 is that once a plaintiff employee or consumer has alleged and proved that a hotel or restaurant violated HRS § 481B–14, damages under HRS § 480–13 may be recovered.