**Electronically Filed
Supreme Court
SCWC-11-0000594
22-DEC-2014
09:13 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

---

JASON KAWAKAMI,
individually and on behalf of all others similarly situated,
Petitioner/Plaintiff-Appellant/Cross-Appellee,

vs.

KAHALA HOTEL INVESTORS, LLC, dba KAHALA HOTEL AND RESORT,
Respondent/Defendant-Appellee/Cross-Appellant.

---

SCWC-11-0000594

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-11-0000594; CIVIL. NO. 08-1-2496)

December 22, 2014

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY WILSON, J.

## I.  Introduction

In this case, we are once again confronted with alleged

violations of Hawaii's hotel or restaurant service charge law,

Hawaiʻi Revised Statutes ("HRS") § 481B-14 (2008).[1]
Specifically, we consider the following issue: Under HRS § 481B-14, does a hotel or restaurant's use of service charges to pay its employees' "wages" without disclosing such practice to its customers constitute an unfair or deceptive act or practice in the conduct of trade or commerce ("UDAP") and/or an unfair method of competition ("UMOC") pursuant to HRS § 480-2 (2008).  As discussed below, we conclude in the affirmative.

Jason Kawakami ("Kawakami") held his wedding reception at the Kahala Hotel and Resort ("Kahala Hotel") in July 2007.  Kahala Hotel collected a 19% service charge on the purchase of food and beverages for his reception.  Kahala Hotel did not distribute the 19% service charge directly to its employees as "tip income."  Instead, 15% of the service charge was retained by Kahala Hotel as a "management share," then reclassified and used to pay for the banquet employees' "wages."  No disclosure was

---

[1]    HRS § 481B-14 states:

Any hotel or restaurant that applies a service charge for the sale of food or beverage services shall distribute the service charge directly to its employees as tip income or clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees.

made to Kawakami that a portion of the service charge was used as wages, rather than tip income.

Kawakami, individually and on behalf of all other similarly situated individuals ("Plaintiff Class") filed a lawsuit in the Circuit Court of the First Circuit ("circuit court") alleging that Kahala Hotel violated HRS § 481B-14 when it failed to either distribute the service charges directly to its employees as tip income or disclose to the Plaintiff Class that the service charges were being used to pay for costs or expenses other than "wages and tips" of employees.

The circuit court[2] held that pursuant to HRS § 481B-14, the plaintiff customer is entitled to know that a portion of the service charge would not be paid to employees as tip income, but would, instead, become the property of Kahala Hotel to be used as the hotel deemed appropriate. Specifically, the circuit court held: "That the hotel decides to use its 15 percent share of the service charge to offset employees' wages, does not alter, reduce, negate, or discharge the Defendant's disclosure obligations under HRS section 481 B-14."

---

[2] The Honorable Gary W.B. Chang presided.

3

The Intermediate Court of Appeals ("ICA") disagreed. In its March 25, 2014 Memorandum Opinion, the ICA held that because the hotel had reclassified its 15% management share to pay its banquet employees' wages, Kahala Hotel was in compliance with HRS § 481B-14 pursuant to this court's interpretation of "tip income" in Villon v. Marriott Hotel Services, Inc., 130 Hawaiʻi 130, 306 P.3d 175 (2013). The ICA thus concluded that no disclosure was required.

On certiorari, Kawakami challenges the ICA's conclusion that HRS § 481B-14 does not mandate disclosure of service fees used for wages.[3]

We hold that pursuant to HRS § 481B-14, a hotel or restaurant that applies a service charge for food or beverage services must either distribute the service charge directly as tip income to the non-management employees who provided the food

---

[3] Kawakami presented the following question on certiorari:

Whether the ICA gravely erred when it held that a hotel that fails to: (1) distribute 100% of the service charge collected directly to its employees as tip income, and (2) fails to disclose to customers that it is retaining portions of the service charge is nevertheless complying with HRS § 481B-14 if the hotel is "reclassifying" this money and making an accounting adjustment crediting the retained service charge against its preexisting wage and salary obligations.

4

or beverage services, or disclose to its customers that the service charges are not being distributed as tip income.

## II.  Background

Kahala Hotel generally levies a 19% or 20% service charge for banquet events at the hotel in connection with the purchase of food or beverages.  The service charges are placed in one fund.  Pursuant to a Collective Bargaining Agreement ("CBA") between Kahala Hotel and Unite Here! Local 5, the union representing Kahala Hotel employees, 85% of the service charges are distributed to the employees as tip income.  The CBA then permits the hotel to retain the other 15% as the "management's share."  At the end of the month, this portion is reclassified to offset Kahala Hotel's wage obligations to its banquet employees. Here, Kahala Hotel collected a 19% service charge from Kawakami on the purchase of food and beverages for his wedding reception. Kahala Hotel then retained 15% of the service charge as its management share before reclassifying the charges to pay its employees' wages.

On December 3, 2008, Kawakami filed a lawsuit individually and on behalf of the Plaintiff Class,[4] which

---

[4]     The circuit court certified the class on January 12, 2010.

consisted of customers who paid a service charge to Kahala Hotel in connection with the purchase of food or beverages. In the Complaint, Kawakami alleged that Kahala Hotel charged customers a "service charge" that was calculated as a percentage of the total cost of food and beverage, typically ranging between 15% and 23%. Kawakami alleged that Kahala Hotel failed to clearly disclose to Kawakami and its other customers that Kahala Hotel was not distributing a portion of the service charge to its employees and in fact, retained that portion for itself.

In addition, Kawakami alleged that Kahala Hotel had a policy and practice of retaining a portion of the service charges and using this portion to pay managers and non-tipped employees who did not serve or assist in serving food and beverages. Kawakami alleged that such conduct was a direct violation of HRS § 481B-14 and thus, constituted a UDAP or UMOC pursuant to HRS § 480-2.

Kahala Hotel asserted that Kawakami was not informed that the service charge was being used to pay for costs and expenses other than wages and tips of employees because the service charge was in fact being used to pay for the wages and tips of banquet employees through its reclassification system.

## A.    Trial Court Proceedings

On August 19, 2009, Kawakami, on behalf of the Plaintiff Class, filed a motion for summary judgment, arguing that the failure to disclose the fact that part of the service charge was not being distributed directly to its employees as tip income was a violation of HRS § 481B-14, and thus, a per se UDAP violation under HRS § 480-2.

On September 13, 2010, Kahala Hotel also filed a motion for summary judgment.  Kahala Hotel argued that because it distributed all of the service charges it collected as employee wages and tips, it was not required by statute to make any disclosures to consumers; therefore, its practice did not violate HRS § 481B-14.

Because neither summary judgment motion sought a complete adjudication of all claims and defenses, the court construed both motions as motions for partial summary judgment, specifically addressing the construction of HRS § 481B-14.  The court then granted Kawakami's motion for partial summary judgment, agreeing with Kawakami's interpretation of the statute. The court reasoned that the CBA permitted the employer to treat its 15% share of the service charge as its property, rather than employee property.  Thus, employees received their specified 85%

7

of the service charge as tip income; however, Kahala Hotel reclassified the remaining 15% of the service charge as the management share before distributing it as wages. The court concluded that Kahala Hotel's entitlement to, or use of, the 15% management share did not violate HRS § 481B-14; failure to disclose such use did.

The court held that based on the language of HRS § 481B-14 and its legislative history, the law required Kahala Hotel to either distribute the service charge to its employees as tip income, or make a disclosure of the purpose for which the service charge was being used. The court explained: "The point is that 15 percent of the service charge is not being paid as tip income to employees, and the law entitles the customer to be informed of that fact." The court thus rejected Kahala Hotel's argument that disclosure was not required because Kahala Hotel used its 15% of the service charge to pay wages.

A jury trial was held to determine the issue of damages. At the close of Kawakami's evidence, Kahala Hotel moved for judgment as a matter of law ("JMOL") on the basis that Kawakami failed to provide any evidence regarding economic loss or injury. Kahala Hotel renewed its motion at the close of its own evidence. The circuit court denied both motions.

8

On December 17, 2010, the jury returned its verdict, finding that Kahala Hotel's failure to disclose that not all of the service charges were directly distributed to its employees as tip income was the legal cause of the injuries to the Plaintiff Class. The jury awarded the Plaintiff Class $269,114.73, which represented the management share of the service charges. Following the verdict, Kahala Hotel again moved for JMOL, which the court denied. On February 8, 2011, Kahala Hotel filed a renewed motion for JMOL. The circuit court granted this fourth JMOL motion noting that the record failed to establish 1) that plaintiffs suffered any injury, and 2) the amount of plaintiffs' damages. The court then issued its Final Judgment, which effectively reversed the jury's verdict, and entered judgment in favor of Kahala Hotel.

B. **Appeal to the Intermediate Court of Appeals**

Both parties appealed to the ICA. Kawakami challenged the circuit court's determination that, as a matter of law, Kawakami and the Plaintiff Class were not entitled to damages. Specifically, in his appeal, Kawakami contended that the circuit court erred in granting Kahala Hotel's fourth motion for JMOL; Kawakami argued there was substantial evidence of injury to support the jury's damages award. Kawakami also argued that the

circuit court erred in allowing Kahala Hotel to introduce evidence of how it distributed its service charges, claiming that such evidence was not relevant to the calculation of damages. As discussed further below, the ICA did not address the issues raised in Kawakami's appeal, and affirmed judgment in favor of Kahala Hotel on other grounds.

Kahala Hotel's cross-appeal challenged the circuit court's summary judgment order entered in favor of Kawakami. Kahala Hotel argued that the circuit court did not acknowledge the plain language of the statute, and instead, relied on an interpretation that renders void a material part of the statute. Kahala Hotel contended that because it paid its 15% of the service charge as "wages," the payment was for "wages and tips"; and, properly interpreted, HRS § 481B-14 permits Kahala Hotel's practice of using all of the collected service charges to pay "wages and tips of employees" without any disclosure to the customer.

In its March 25, 2014 Memorandum Opinion, the ICA agreed with Kahala Hotel's position regarding the interpretation of the statute, and accordingly, vacated the circuit court's entry of summary judgment, directed entry of summary judgment in favor of Kahala Hotel, and affirmed the circuit court's Final

10

Judgment.[5]  Finding this determination dispositive, the ICA did not address the issues raised by Kawakami in his appeal.

The ICA held that pursuant to Villon, 130 Hawaiʻi at 135, 306 P.3d at 180, "tip income" and "wages and tips" are synonymous within the meaning of HRS § 481B-14; and a contrary conclusion risked an "absurd result - the impossibility of compliance."  Thus, the ICA held that although Kahala Hotel did not distribute the service charge as "tip income," it was unnecessary to issue a disclosure to the customer because the service charge was ultimately applied toward satisfying its wage obligation to the employee.

The ICA recognized its decision contravened the legislature's intent to inform customers when service charges were not paid as tips; however it concluded: "Even if the construction we apply today does, in some circumstance, cause unintended consequences, we are obliged to leave it to the legislature to resolve the matter."

---

[5]     The ICA noted that "[b]ecause the Final Judgment is consistent with our resolution of [Kahala Hotel's] cross-appeal, the judgment is affirmed."

11

### III.  Standard of Review

A motion for summary judgment is reviewed de novo, under the same standard applied by the trial court.  Gurrobat v. HTH Corp., 133 Hawaiʻi 1, 14, 323 P.3d 792, 805 (2014). "'Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Pac. Int'l Servs. Corp. v. Hurip, 76 Hawaiʻi 209, 213, 873 P.2d 88, 92 (1994) (quoting Kaapu v. Aloha Tower Dev. Corp., 74 Haw. 365, 379, 846 P.2d 882, 888 (1993)).

### IV.  Discussion

On certiorari, Kawakami reiterates that HRS § 481B-14 requires Kahala Hotel to either pay all of the service charge to its employees as tip income or, if it retains any portion, to disclose its practice to its customers.  Kawakami contends that the trial court properly found that Kahala Hotel violated HRS § 481B-14 when it did not disclose that 100% of the service charges paid by the Plaintiff Class were not paid to the employees who served them.  Kawakami argues that without any disclosure of this practice, "Kahala Hotel misled customers into thinking that

12

servers received the service charge in full as tip income." In support, Kawakami cites this court's decisions in Davis v. Four Seasons Hotel Ltd., 122 Hawaiʻi 423, 228 P.3d 303 (2010), Villon, Gurrobat, and HRS § 481B-14's legislative history.

In its Response, Kahala Hotel offers a differing interpretation of Villon, arguing that under Villon, the two clauses in HRS § 481B-14 are synonymous. Under this view, "tip income" is indistinguishable from "wages and tips." Kahala Hotel argues that because 100% of the service charges were used to pay for wages of employees, there was no need to make a disclosure under the statute. Kahala Hotel thus urges this court to interpret the phrase "tip income" in the first clause of HRS § 481B-14 to include "wages."

Kahala Hotel's interpretation of HRS § 481B-14 contravenes what is now recognized by this court as the well-settled duty of hotels and restaurants to either distribute the entirety of the service charge directly to non-management banquet employees who served the consumers as "tip income," or to disclose its practice of withholding the service charge so that a well-informed consumer may choose to leave a tip for the employees as a reward for their service.

## A. The Legislature Intended the Phrase "Wages and Tips" To Mean "Tip Income" Within the Meaning of HRS § 481B-14

The purpose of HRS § 481B-14 is to require hotels and restaurants that apply a service charge for food or beverage services, but do not distribute the charge directly to employees as tip income, to advise customers that the service charge will be used to pay for costs or expenses other than wages and tips of employees.[6] 2000 Haw. Sess. Laws Act 16, at 21–22. This court comprehensively expounded the legislative history of HRS § 481B-14 in Villon.

In Villon, we explained that when the bill went to its second and last House referral, the House Finance Committee drafted a Standing Committee Report indicating that the purpose of the bill was to require disclosure from hotels or restaurants applying service charges that were not being distributed to its employees:

> [T]he purpose of the bill was to "prevent unfair and deceptive business practices by requiring hotels or restaurants that apply a service charge for the sale of food or beverage, to disclose to the purchaser that the service

---

[6] Initially, the proposed bill that would become HRS § 481B-14 did not address the need to inform the customers when the employee did not receive a portion of the tip or service charge. H.B. 2123, entitled, "'A BILL FOR AN ACT RELATING TO WAGES AND TIPS OF EMPLOYEES,' sought only to 'protect employees who receive or may receive tips or gratuities during the course of their employment from having these amounts withheld or credited to their employers.'" Villon, 130 Hawaiʻi at 137, 306 P.3d at 182 (quoting H.B. 2123, 20th Leg., Reg. Sess. (2000)).

14

> charge is being used to pay for costs or expenses other than wages and tips of employees, <u>if the employer does not distribute the service charge to its employees</u>."

<u>Villon</u>, 130 Hawaiʻi at 138, 306 P.3d at 183 (emphasis added) (quoting H. Stand. Comm. Rep. No. 854-00, in 2000 House Journal, at 1298). The House Finance Committee amended the bill by making "'technical, nonsubstantive amendments for purposes of clarity and style'" by inserting the words "directly" and "as tip income" to the first clause of the bill so as to read as follows: "'Any hotel or restaurant that applies a service charge for the sale of food or beverage services shall distribute the service charge <u>directly</u> to its employees as <u>tip income</u> . . . .'" <u>Id.</u> at 138-39, 306 P.3d at 183-84 (quoting H.B. 2123, H.D. 2, 20th Leg., Reg. Sess. (2000)).

Similarly, the Senate Standing Committee Report specifically explained that HRS § 481B-14's purpose was to inform customers if employees did not receive the intended service charges:

> "The purpose of this measure is to enhance consumer protection with respect to service charges imposed by hotels and restaurants on the sale of food and beverages.
>
> ....
>
> Your Committee finds that it is generally understood that service charges applied to the sale of food and beverages by hotels and restaurants are levied in lieu of a voluntary gratuity, and are distributed to the employees providing the

15

service. Therefore, most consumers do not tip for services over and above the amounts they pay as a service charge.

Your Committee further finds that, contrary to the above understanding, moneys collected as service charges are not always distributed to the employees as gratuities and are sometimes used to pay the employer's administrative costs. Therefore, the employee does not receive the money intended as a gratuity by the customer, and the customer is misled into believing that the employee has been rewarded for providing good service.

This measure is intended to prevent consumers from being misled about the application of moneys they pay as service charges by requiring under the Unfair and Deceptive Practices Act that a hotel or restaurant distribute moneys paid by customers as service charges directly to its employees as tip income, or disclose to the consumer that the service charge is being used to pay for the employer's costs or expenses, other than wages and tips . . . ."

Id. at 139, 306 P.3d at 184 (alterations in original) (quoting S. Stand. Comm. Rep. No. 3077, in 2000 Senate Journal, at 1286–87).

Thus, Villon's extensive account of HRS § 481B-14's legislative history reveals that despite the legislature's use of the phrase, "wages and tips" in the statute, its subsequent insertion of "tip income" was to clarify that the service charges must be distributed to the employee as "tip income." The legislature specifically sought to meet consumer expectations "that service charges applied to the sale of food and beverages by hotels and restaurants are levied in lieu of voluntary gratuity, and are distributed to the employees providing the service"; an expectation that resulted in "most consumers [not tipping] for services over and above the amounts they pay as a

16

service charge." S. Stand. Comm. Rep. No. 3077, in 2000 Senate Journal, at 1287. If the hotel or restaurant did not distribute the service charges as "tip income," the statute required disclosure to the consumer. The insertion of the phrase "tip income" reflects the legislature's focus on ensuring that service charges are distributed directly as "tips" in a manner that protects consumers from being misled about the application of moneys they pay as service charges.

Accordingly, for the purposes of enforcement under Hawaii's UDAP and UMOC provisions, the legislative history supports a reading of the phrase "wages and tips" in the second clause of HRS § 481B-14 to specifically mean "tip income," rather than "wages."

B.   **Villon's Holding Is Limited to the Enforcement of HRS § 481B-14 Under Hawaii's "Withholding of Wages" Statute, HRS § 388-6**

The ICA explicitly relies on Villon in its Memorandum Opinion to conclude that the terms "tip income" and "wages and tips" in HRS § 481B-14 synonymously bear the meaning "wages," concluding: "We need go no further than Villon's determination that 'the plain language of HRS § 481B-14 expressly equates 100% of a 'service charge' with [both] 'tip income' and 'wages and tips of employees.'" In so deciding, however, the ICA fails to

17

recognize that <u>Villon</u>'s holding is expressly limited to the meaning of "compensation earned" under HRS § 388-6 (1993).

In <u>Villon</u>, the issue was whether tips and/or service charges constitute "compensation earned" within the meaning of HRS § 388-6, which bars withholding of "compensation earned" unless authorized by the employee.[7]  The petitioner, Villon, sought recovery pursuant to HRS § 388-6 for tips/service charges withheld without his authorization by his employer, the defendant hotel.  The defendant hotel argued that the undisclosed amount of service charges was not "compensation earned" within the meaning of HRS § 388-6.  <u>Villon</u>, 130 Hawaiʻi at 136, 306 P.3d at 181.  We rejected this argument, concluding that a service charge is "compensation earned" either as "tip income" or "wages and tips of employees."  <u>Id.</u> at 136-37, 306 P.3d at 181-82.

We concluded that under HRS § 388-6, service charges are "compensation earned" by an employee because they are levied upon the consumer based upon "'labor or services rendered by an

---

[7]     HRS § 388-6 states in relevant part:

No employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by any employee except where required by federal or state statute or by court process or when such deductions or retentions are authorized in writing by the employee . . . .

employee,' usually in lieu of a traditional tip." Id. at 135, 306 P.3d at 180 (quoting HRS § 388-1). Thus, "when a hotel or restaurant distributes less than 100% of a service charge directly to its employees without disclosing this fact to the purchaser, the portion withheld constitutes 'tip income,' synonymously phrased within HRS § 481B-14 as 'wages and tips of employees.'" Id.

Unlike the instant case, which invokes Hawaii's consumer protection provisions, HRS §§ 480-2 and 480-13, for violations of HRS § 481B-14, Villon involved a class action lawsuit by hotel banquet employees invoking Hawaii's wage payment statutes. Villon addressed the employers' authority to withhold tips and service charges under HRS § 388-6, not whether the employers were required to disclose the withholding to customers. We explicitly held that, because HRS § 481B-14 defines service charges as "tip income" and "wages and tips of employees," the term "wages" included service charges as tips or gratuities of any kind "for the purpose of enforcement under HRS § 388-6[.]" Villon, 130 Hawaiʻi at 135, 306 P.3d at 180 (emphasis added). We did not address whether, under HRS § 481B-14, "tip income" means "wages" for purposes of disclosure.

19

Throughout Villon, we explicitly differentiated the phrase "wages and tips" in HRS § 481B-14 from the general term "wages" as used in other provisions of the HRS. We explained that although HRS § 387-1 (1993) defines "wages" to exclude "tips or gratuities" of any kind, it "is solely for the purpose of calculating the 'tip credit' under HRS § 387-2 (1993 & Supp. 2005), not for the purposes of allowing employers to withhold 'service charges,' 'wages and tips of employees,' and 'tip income,' from employees under HRS § 388-6." Villon, 130 Hawaiʻi at 136, 306 P.3d at 181. Thus, we recognized that the term "wages" bore a meaning directly related to the purpose of HRS § 388-6.

The ICA therefore erred in holding that Villon supported a conclusion that because Kahala Hotel distributed 15% of the service charges as "wages," Kahala Hotel had satisfied HRS § 481B-14's mandate to disclose to customers its use of service charges for wages.

**C. Use of Service Charges To Offset Wage Obligations Is Analogous To Using Service Charges To Pay Administrative Costs**

Kahala Hotel's undisclosed use of service charges to pay wages of banquet employees conflicts with this court's decision in Gurrobat. In Gurrobat, the defendant argued that it

20

complied with HRS § 481B-14 because it distributed a portion of the service charges to managerial employees involved in providing banquet services to the consumers. 133 Hawaiʻi at 17, 323 P.3d at 808. This court rejected the defendant's argument, holding that retaining a portion of service charges to supplement the income of managerial employees is analogous to using the service charges to pay the employer's administrative costs. Id. We concluded that such a practice violated HRS § 481B-14 because hotels and restaurants are "required to distribute one-hundred percent of service charge income to <u>non-management</u> service employees who provided the services for which <u>customers believed they were tipping</u>" or to disclose their retention of a portion of the service charge to customers. Id. at 17-18, 323 P.3d at 808-09 (second emphasis added).

In the instant case, Kahala Hotel similarly used the service charges to pay the employer's administrative costs, i.e., its wage obligations to its banquet employees. As explained by Kahala Hotel's controller, Khara Markham, the entirety of the service charges are placed in one fund. Eighty-five percent of the service charges are then distributed to the banquet employees, while 15% of the service charges are "retained and at the end of the month" reclassified to offset Kahala Hotel's

21

"banquet wages." Ms. Markham also stated that the 15% is not, in fact, distributed to the employee as tip income; rather, "it's just taken as an offset." In other words, 15% of the service charges were used to offset the expense that the hotel incurs in paying wages and salaries. This practice is virtually indistinguishable from using the money to pay for an employer's administrative costs or expenses.

In Gurrobat, this court reiterated that the evolution of HRS § 481B-14 primarily focused on the problem of the "uninformed consumer[], who may not leave additional tips for the service employees, mistakenly thinking that the service charge they paid were tips." 133 Hawaiʻi at 17, 323 P.3d at 808 (citing Villon, 130 Hawaiʻi at 138, 306 P.3d at 183). We then noted that toward the end of H.B. 2123's passage, the legislature also recognized that "'moneys collected as service charges are not always distributed to the employees as gratuities and are sometimes used to pay the employer's administrative costs'"; therefore, the employee "'does not receive the money intended as a gratuity by the customer, and the customer is misled into believing that the employee has been rewarded for providing good service.'" Id. (quoting Villon, 130 Hawaiʻi at 139, 306 P.3d at 184). Thus, in Gurrobat, this court repeated its holding in

22

<u>Villon</u> that HRS § 481B-14 evinces a concern for both the uninformed consumer as well as the employees who "'may not be receiving tips or gratuities from these service charges.'"  <u>Id.</u> (quoting <u>Villon</u>, 130 Hawaiʻi at 137, 306 P.3d at 182).

Accordingly, adopting an interpretation of HRS § 481B-14 that permits a hotel to use service charges to offset its wage obligations to its employees, without disclosure to the consumers, would be directly contrary to this court's holding in <u>Gurrobat</u>.  <u>Gurrobat</u> expressly reflects a concern that such a practice negatively impacts both employees and consumers.  The employees are deprived of the extra income they would have earned had the hotel distributed the entirety of the service charge as "tip income" and, absent disclosure, consumers are misled into believing the service charges are being used as a gratuity to employees who provide the services for which customers believe they are tipping.

## V.  Conclusion

For the foregoing reasons, we hold that the ICA erred in holding that no disclosure to Kawakami was required because Kahala Hotel had reclassified its management share of the service charge to pay for its employees' wages.  Kahala Hotel failed to comply with HRS § 481B-14's mandate to either distribute the

23

entirety of a service charge directly to its employees as "tip income," or to disclose to its consumers its practice of retaining the service charge.  The April 25, 2014 judgment of the Intermediate Court of Appeals is vacated and the Circuit Court of the First Circuit's January 6, 2011 Order Granting Plaintiff's August 19, 2010 Motion for Summary Judgment is affirmed.  We remand the case to the ICA to address the issues raised by Kawakami in his appeal.


John Francis Perkin and          /s/ Mark E. Recktenwald
Brandee J.K. Faria
for petitioner                   /s/ Paula A. Nakayama

David J. Minkin and              /s/ Sabrina S. McKenna
Dayna H. Kamimura-Ching
for respondent                   /s/ Richard W. Pollack

                                 /s/ Michael D. Wilson

