**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-21-0000687
25-AUG-2025
08:21 AM
Dkt. 26 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

RENELDO RODRIGUEZ, individually and
on behalf of all others similarly situated,
Petitioner/Plaintiff-Appellee,

vs.

MAUNA KEA RESORT LLC; HAWAII PRINCE HOTEL WAIKIKI LLC;
PRINCE RESORTS HAWAII, INC.,
Respondents/Defendants-Appellants.

SCWC-21-0000687

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-21-0000687; CASE NO. 1CC161002191)

AUGUST 25, 2025

RECKTENWALD, C.J., MCKENNA, EDDINS, GINOZA, and DEVENS, JJ.

OPINION OF THE COURT BY EDDINS, J.

Hotels and restaurants that apply a service charge for food
or beverage services must "distribute the service charge
directly to its employees as tip income" or "clearly disclose"
to consumers that the service charge is being used to cover

"costs or expenses other than wages and tips of employees." Hawai'i Revised Statutes (HRS) § 481B-14 (Supp. 2015).

HRS § 481B-14 serves a dual purpose. It lessens consumer confusion and protects tip-earning employees.

Food and beverage server Reneldo Rodriguez sued Mauna Kea Resort LLC, Hawaii Prince Hotel Waikiki LLC, and Prince Resorts Hawaii, Inc. (collectively, Mauna Kea). He alleges Mauna Kea applied service charges but neither (1) distributed the entirety of those service charges as gratuities to servers, nor (2) clearly disclosed to consumers that it would *not* distribute the entirety of those service charges to servers. That violates HRS § 481B-14 and defeats its purposes, Rodriguez says.

Rodriguez points to Mauna Kea's pre-2017 disclosures that read: "[W]e allocate a portion of the service fee to our employees as tips or wages[.]" Those disclosures are no good, he maintains.

The circuit court agreed with Rodriguez. The Intermediate Court of Appeals (ICA) did not.

Over the years, this court has addressed when a disclosure is required. See, e.g., Davis v. Four Seasons Hotel Ltd., 122 Hawai'i 423, 228 P.3d 303 (2010) (Davis I); Villon v. Marriott Hotel Servs., Inc., 130 Hawai'i 130, 306 P.3d 175 (2013); Gurrobat v. HTH Corp., 133 Hawai'i 1, 323 P.3d 792 (2014); and

2

Kawakami v. Kahala Hotel Invs., LLC, 134 Hawai'i 352, 341 P.3d 558 (2014) (Kawakami I).

But in each of those cases, a hotel or restaurant made no disclosure at all.  For the first time, we are asked to rule on the sufficiency of a disclosure.

We hold that the ICA erred in concluding that Mauna Kea's 2010-2016 disclosures did not violate HRS § 481B-14.

We also hold that the ICA erred by finding that Mauna Kea met its "burden of establishing that its service charge disclosures were sufficient[.]"  It ruled that Mauna Kea's motion for summary judgment should have been granted for that reason.  But the ICA offered no reasoning as to whether Mauna Kea "clearly disclosed" to consumers that the service charge was not a tip.

Last, we advance the legislative intent.  When some, but not all, of a service charge goes directly to employees as tips, the employer must inform consumers the amount or percentage of the service charge that is paid to food and beverage servers.

**I.**

In December 2016, Rodriguez brought a class action suit against Mauna Kea on behalf of "over 100 servers, porters, bartenders and other employees" (collectively, Rodriguez).  He filed an amended complaint in January 2017.  From 2010-2016, Mauna Kea had failed to adequately disclose to customers that

3

part of the service charge would not be distributed to the employees, Rodriguez alleged. And Mauna Kea, he added, had retained that part.

The Mauna Kea banquet contract disclosure from 2010-2016, for example, read in part: "[W]e allocate a portion of the service fee to our employees as tips or wages and a portion of the service fee to pay for costs or expenses other than wages and tips of employees."

Rodriguez claimed that Mauna Kea's disclosures violated HRS § 481B-14(a):

> (a) Any:
>
> > (1) Hotel or restaurant that applies a service charge for the sale of food or beverage services; or
> >
> > (2) Hotel that applies a service charge for porterage services;
>
> shall distribute the service charge directly to its employees as tip income or clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees.

HRS § 481B-14(a) (emphasis added).

Mauna Kea updated its disclosures later in 2017 to specify what percentage went to employees and clarify that the service charge was not a tip or gratuity. Looking again at Mauna Kea's banquet contract disclosure, the 2017 update reads:

> All food and beverage functions are subject to a mandatory 22% surcharge, which consists of [a] 16% gratuity that is pooled and distributed to those food and beverage staff servicing you and your function, and the remaining 6% is retained by Hotel to cover non-itemized costs of the event (and not distributed as a tip or gratuity to the Hotel's employees). The Banquet Service Charge is subject to State

4

> Tax, which is subject to change without notice. The mandatory surcharge will be posted to your Master Account.

Mauna Kea and Rodriguez filed dueling motions for summary judgment (MSJ) in the Circuit Court of the First Circuit.

Because Mauna Kea tracked HRS § 481B-14's language and told customers that a portion of the service charge was used to pay for "costs or expenses other than the wages or tips of employees," Mauna Kea insisted its 2010-2016 disclosures were fine.

Rodriguez countered. Mauna Kea's disclosures were not only deficient, but were "misleading and actually outright false." They tricked customers into believing that the service charge they paid would go to the servers as tip income.

Rodriguez prevailed. The circuit court granted Rodriguez's MSJ and denied Mauna Kea's MSJ. Mauna Kea had failed to "specify the portion of the service charge that was distributed to employees[,]" the court ruled.

The ICA disagreed. Per the plain language of the statute and its legislative history, the ICA held that "the circuit court wrongly interpreted HRS § 481B-14 to require service charge disclosures to specify the actual amount distributed to employees." It felt this requirement went "beyond the scope of the statutory language." The ICA ruled that the circuit court should have granted Mauna Kea's MSJ. It vacated the court's judgment and remanded the case.

5

Rodriguez appealed.  We accepted cert.

## II.

**A.    HRS § 481B-14's plain text and legislative history show that disclosures must clearly signal to customers whether a service charge is a tip**

HRS § 481B-14 directs a hotel or restaurant to (1) "distribute the service charge directly to its employees as tip income" or (2) "clearly disclose" to the consumers "that the service charge is being used to pay for costs or expenses other than wages and tips of employees."

Statutory interpretation begins with the law's words. Alpha, Inc. v. Bd. of Water Supply, 154 Hawai'i 486, 490-91, 555 P.3d 173, 177-78 (2024).  HRS § 481B-14's plain text contemplates a binary choice.  Rodriguez and Mauna Kea agree on that.  The restaurant or hotel may give *all* service charge money to the employees as tips.  Or they can *clearly* disclose.

The legislature's inclusion of "clearly" has meaning.  It can't be read out of the statute.  Courts "give force to and preserve all words of the statute." State v. Chang, 144 Hawai'i 535, 548, 445 P.3d 116, 129 (2019) (citations omitted).  When a term is not statutorily defined, "we may resort to legal or other well accepted dictionaries as one way to determine the ordinary meaning[.]" State v. Tran, 154 Hawai'i 211, 221, 549 P.3d 296, 306 (2024) (cleaned up).

"Clearly" is undefined in the statute. But Black's Law Dictionary defines "clear" as "so plain that a reasonable person would have no difficulty in comprehension; capable of being understood with only a single plausible interpretation." Black's Law Dictionary 319 (12th ed. 2024). To be clear is to be "free from obscurity or ambiguity," "easily understood," or "unmistakable." *Clear*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/clear [https://perma.cc/5LYW-2SWH].

So when a hotel or restaurant does not disperse 100% of a service charge as tip income, it must disclose this fact in a way consumers can understand. See Kawakami I, 134 Hawaiʻi at 360, 341 P.3d at 566; Gurrobat, 133 Hawaiʻi at 17-18, 323 P.3d at 808-09. The disclosure must be unambiguous. The legislature's requirement to "clearly disclose" means that there should only be one plausible interpretation of that disclosure.

But HRS § 481B-14 does not mention what it means to "clearly disclose." Does it mean specifying percentages? Reciting buzzwords like gratuity, wages, or tips? Does it mean the disclosure must be displayed conspicuously on the receipt – not in tiny print? The statute is ambiguous.

Where there is ambiguity, we look at the legislative history. Alpha, 154 Hawaiʻi at 491, 555 P.3d at 178.

The legislature crafted HRS § 481B-14 to "advise customers that the service charge is being used to pay for costs or expenses other than wages and tips of employees."  2000 Haw. Sess. Laws Act 16, §1 at 22.

There is a dual purpose: (1) to reduce consumer confusion and (2) to protect servers' tips.  See id. at 21-22.

The legislature found that consumers generally understood that service charges were "levied in lieu of a voluntary gratuity," and were "distributed to the employees providing the service."  S. Stand. Comm. Rep. No. 3077, in 2000 Senate Journal, at 1286-87.

But that wasn't always the case.  Id.  Sometimes the employer used the service charges to cover the employer's administrative costs.  Id.  And consumers left no tip for the employee, mistakenly believing the service charge had already covered it.  Id.; H. Stand. Comm. Rep. No. 479-00, in 2000 House Journal, at 1155.  The legislature intended HRS § 481B-14 to patch this problem and "prevent consumers from being misled about the application of moneys they pay as service charges[.]" S. Stand. Comm. Rep. No. 3077, in 2000 Senate Journal, at 1287.

The legislature also designed HRS § 481B-14 to support workers: "hotel and restaurant employees may not be receiving tips or gratuities."  2000 Haw. Sess. Laws Act 16, §1 at 21. Through three forms of the bill, three committee reports, and

Act 16 as signed into law by the Governor, the bill had one title – "Relating to Wages and Tips of Employees." Davis I, 122 Hawai'i at 432-33, 228 P.3d at 312-13. The legislature drafted the statute to protect tip-receiving employees from having tips withheld or credited to their employers. H. Stand. Comm. Rep. No. 479-00, in 2000 House Journal, at 1155. Because a hotel or restaurant withholding a service charge without disclosure impacts *both employees and consumers*, the legislature was concerned with those unpleasant impacts.

Thus, HRS § 481B-14's plain language and legislative history establish that disclosures must clearly notify customers whether a service charge is a tip.

**B. Mauna Kea's pre-2017 disclosures were insufficient**

Mauna Kea maintains its pre-2017 disclosures met HRS § 481B-14's clear disclosure requirement. Its 2010-2016 disclosures mirror the statute, Mauna Kea says, by informing consumers "we allocate a portion of the service fee to our employees as tips or wages and a portion of the service fee to pay for costs or expenses other than wages and tips of employees." Copying the language makes the disclosure sufficient, Mauna Kea insists. "All you have to do is say that the service charge is being used to pay for the employer's costs or expenses other than wages or tips."

9

Rodriguez protests. Simply reciting the statute's language isn't enough. And the ICA erred, he believes, by siding with Mauna Kea without adequately considering whether Mauna Kea's 2010-2016 forms *clearly disclosed* to consumers that the service charge was not a tip.

Rodriguez is right. The ICA erred.

The ICA had no analysis regarding whether Mauna Kea's pre-2017 disclosures were clear in light of HRS § 481B-14's dual purpose to reduce consumer confusion and protect servers' tips. Rather, the ICA reasoned that the plain language, legislative history, and HRS § 481B-14 case law do not expressly instruct a hotel or restaurant to "specify with particularity the fraction or percentage of the service charge that is distributed to employees." Thus, it found that Mauna Kea had met its burden to establish its disclosures were sufficient.

We conclude that rotely reciting HRS § 481B-14's language is not enough to satisfy that law's clear disclosure requirement and intent. Validating that practice elevates form over substance, a disfavored approach. See Coon v. City & Cnty. of Honolulu, 98 Hawai'i 233, 254, 47 P.3d 348, 369 (2002).

Plus, even if a copy-and-paste method worked, Mauna Kea's disclosures told customers that "a portion" of the service charge went toward costs or services other than wages or tips. Mauna Kea's 2010-2016 catering disclosure contracts, for

10

example, read: "[W]e allocate <u>a portion</u> of the service fee to our employees as tips or wages and <u>a portion</u> of the service fee to pay for costs or expenses other than wages and tips of employees."  (Emphases added.)

This language injects ambiguity into the disclosure.  Does a portion of the service charge mean nearly all of it?  Or almost none of it?  Does "a portion" to "tips or wages" mean that *none* of the service charge is allocated to tip income?  Or does it mean that nearly all of it is?  It's any consumer's guess.  And that reinforces our point – just because some of a disclosure's language tracks the statute's language, doesn't mean a disclosure is clear and meaningful.

Mauna Kea's "portion" disclosures also skirt HRS § 481B-14's dual purpose.  A disclosure is meant to both inform consumers and protect servers in situations where a consumer thinks they have tipped by paying a service charge, yet the hotel has diverted those funds for another purpose.  <u>See</u> S. Stand. Comm. Rep. No. 3077, in 2000 Senate Journal, at 1286-87.

It follows that a vague disclosure that says "a portion" is used for tips or wages and a portion is used for "other costs," does not satisfy these purposes.  That language does not inform consumers whether they have adequately or sufficiently tipped the employee in acknowledgement and appreciation of their good service.  And it doesn't ensure employees receive their tips.

11

All "a portion" conveys is that some percentage greater than zero percent but less than one hundred percent goes to the employee. That indefinite range ignores HRS § 481B-14's dual purposes.

Mauna Kea's disclosures clearly fail. They do little to inform the consumer whether or not to tip, and how much to tip. And they do little to ensure employees receive tips.

We hold that the ICA erred in reversing the circuit court's grant of summary judgment to Rodriguez and granting summary judgment to Mauna Kea.

C.  **This court's previous analyses of HRS § 481B-14 suggest that disclosures must distinguish between wages and tips**

Under HRS § 481B-14, hotels and restaurants have two choices when it comes to service charges – they can either (1) "distribute the service charge directly to its employees as <u>tip income</u>" or (2) "clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than <u>wages and tips</u> of employees." HRS § 481B-14(a) (emphases added).

But many of Mauna Kea's pre-2017 disclosures read: "[W]e allocate a portion of the service charge to our employees as tips <u>or</u> wages." (Emphasis added.) And all the service charges Mauna Kea distributed to employees were "recorded as wages," not as tips.

12

Mauna Kea says the distinction between wages and tips is just semantics. There is no difference between wages and tips under HRS § 481B-14 because the terms are synonymous. Mauna Kea also says the service charge portion for "tips or wages" goes fully to wages solely for tax reasons, not to reduce employee pay. Thus, it did not mislead consumers, Mauna Kea maintains, when it disclosed that a portion of the service charge went to "tips or wages."

Rodriguez disagrees. A disclosure announcing that a service charge goes toward "tips or wages," but does not go toward tips at all, fails to meaningfully inform a consumer under HRS § 481B-14, he maintains.

Rodriguez is right.

Context matters. This court has distinguished between enforcement and disclosure.

Villon focused on enforcement. It held that HRS § 481B-14's plain language and legislative history show that "tip income" and "wages and tips" are used synonymously in the statute for enforcement purposes under the wage statute, HRS § 388-6 (2015). 130 Hawai'i at 135, 306 P.3d at 180.

But Villon only assessed an employers' authority to withhold tips and service charges under HRS § 388-6. Id. at 132, 306 P.3d at 177. It did not address whether tip income and

13

wages are synonymous for disclosure purposes. Id.; see also Kawakami I, 134 Hawai'i at 359, 341 P.3d at 565.

This court addressed that issue in Kawakami I. There, a consumer sued Kahala Hotel under consumer protection statutes (HRS §§ 480-2 (2008) and 480-13 (2008)) for a HRS § 481B-14 breach because the hotel's non-disclosure "misled customers into thinking that servers received the service charge in full as tip income." Kawakami I, 134 Hawai'i at 357, 341 P.3d at 563. According to its collective bargaining agreement, the Kahala Hotel distributed 85% of service charges to employees as tip income and retained the remaining 15% as the "management's share." Id. at 355, 341 P.3d at 561. Later the hotel reclassified the management's share to offset its wage obligations. Id. The hotel did not disclose this practice to consumers. Id. at 357, 341 P.3d at 563.

Looking to the legislative history, Kawakami I reasoned that "despite the legislature's use of the phrase, 'wages and tips' in the statute, its subsequent insertion of 'tip income' was to clarify that the service charges must be distributed to the employee as 'tip income.'" Id. at 358, 341 P.3d at 564. This court also concluded that the addition of "tip income" reflected the legislature's intent to ensure that service charges are "distributed directly as 'tips' in a manner that

14

protects consumers from being misled about the application of moneys they pay as service charges." Id.

Thus, Kawakami I held that the terms "tip income" and "wages" are not interchangeable for HRS § 481B-14's disclosure purposes. Id. at 359, 341 P.3d at 565. When a hotel or restaurant allocates part of the service charge for wages, that is analogous to using the service charge to pay administrative costs. See id. at 360, 341 P.3d at 566; see also Gurrobat, 133 Hawai‘i at 17, 323 P.3d at 808 (a hotel is not entitled to retain a portion of service charges to supplement the income of managerial employees, who are not otherwise entitled to tip income). Kawakami I was clear. The hotel or restaurant must clearly disclose this practice so that a well-informed consumer may choose to leave a tip in appreciation of the employees' good service. 134 Hawai‘i at 357, 341 P.3d at 563.

Here, Mauna Kea injected ambiguity into its pre-2017 disclosures by grouping tips and wages. Grouping tips and wages makes sense for tax and enforcement purposes. But that practice is best left to tax filing and behind-the-scenes accounting.

In the consumer disclosure context, it creates confusion. Consumers are hard pressed to decipher how much of the service charge goes to tips and how much goes to wages. Plus, grouping tips and wages prevents clear disclosure of how much of a

15

service charge goes toward administrative costs, like the employer's wage obligations.

Reading Mauna Kea's pre-2017 disclosures, consumers may have assumed the service charge acted as a tip for the employee when it actually covered wages. So they may not have tipped, causing employees to lose out. This defeats HRS § 481B-14's dual purposes.

A new rule is needed to advance the legislature's intent.

**D.    The U.S. District Court for the District of Hawai'i has applied this court's understanding of the requirements of HRS § 481B-14 to assess disclosure sufficiency**

HRS § 481B-14's requirements are straightforward when (1) all the money goes to tips, or (2) no money goes to tips. The complicated situation, like in this case, happens when part of the service charge goes to tips.

When all the money goes to tips, no disclosure is necessary. See HRS § 481B-14.

When no service charge money goes to tips, the hotel or restaurant must either (1) state that the service charge is not a gratuity, or (2) disclose that the entire service charge is used for some purpose unrelated to tipping employees. See id. Stating that no part of the service charge goes to employee tips complies with HRS § 481B-14. The hotel or restaurant just needs to clearly notify customers that the service charge is not a tip.

16

But this court has not ruled on HRS § 481B-14's requirements when part of the service charge goes to tips.

Our state's federal district court has. See Wadsworth v. KSL Grand Wailea Resort, Inc., No. 08-00527 ACK-RLP, 2014 WL 6065875 (D. Haw. Nov. 12, 2014) (Wadsworth II).

We find Wadsworth II persuasive.

Like here, Wadsworth II involved a class action case. There the plaintiff employees sued under HRS §§ 388-6, 388-10 (2015), and 388-11 (2015) leveling wage-related claims against their employer hotels and restaurants. Id. at *1. The employees alleged that the hotels "had a policy and practice of retaining for themselves a portion of these service charges . . . without disclosing to the Hotel's customers that the service charges are not remitted in full to the employees who serve the food and beverages." Id.

Looking to this court's HRS § 481B-14 decisions, and noting that "[c]larity and conspicuousness is a question of law," the district court crafted a rule to determine whether an employer had satisfied the clear disclosure requirements. Id. at *4-*5. The court reasoned that customers had enough information to make an informed decision under HRS § 481B-14 when service charge disclosures specified that "(1) the service charge was not a gratuity, (2) the service charge was to be applied entirely to administrative expenses, or (3) a certain amount or percentage

17

of the service charge would be paid to the food and beverage servers." Id.

Wadsworth II then applied this rule to a series of contested disclosures. Id. at *5-9. Two applications are instructive.

First, from 2006-2009, the defendant hotel's banquet event orders included the following disclosure:

> All food and beverage is subject to a 21% service charge and a 4.166% Hawaii State and Local Tax. Service charges include gratuities, taxes, and other hotel service charges.

Id. at *7 (emphasis added).

Wadsworth II found this disclosure deficient. Id. The disclosure did not clearly inform consumers exactly how much of the service charge went to servers as a gratuity. Id. Thus, customers did not have enough information to guide their gratuity decision-making. Id. This may have resulted in misled customers and lost tips. Id. (citing Villon, 130 Hawai'i at 139-40, 306 P.3d at 184-85). Both results – clueless consumers and stiffed workers – flout HRS § 481B-14's consumer and employee protection purposes.

Second, in 2011, the hotel updated its room service disclosures to contain the statement, "Gratuity Included!" Id. at *9. Wadsworth II found this disclosure insufficient. "[A] statement indicating that the service charge includes the gratuity wholly fails to satisfy the requirements of § 481B-14."

18

Id.  Disclosures like that "utterly fail[] to adequately apprise customers what portion, if any, of the service charge is being paid to service employees in lieu of a gratuity."  Id.

Because the service charges were not full gratuities, and they did not go entirely to administrative expenses, the hotel's disclosures needed to specify what amount or percentage of the service charge would be paid to the servers as tips.  See id. at *5.  Since there were no numbers, the disclosures failed to inform the consumers and protect the workers.  See id. at *7, *9.

The same reasoning applies to Mauna Kea's 2010-2016 disclosures.

Here, Mauna Kea's disclosures relate to the scenario where some of the service charge ends up in the servers' pockets.  Thus, Wadsworth II becomes instructive.

When a hotel or restaurant chooses to pool tips with other expenses, HRS § 481B-14 requires specificity.  Otherwise, a disclosure is ambiguous, contradicting both the plain meaning of "clearly disclose" and the purposes of the statute to inform customers and protect tip-earning employees.

In Wadsworth II, the hotel disclosed that "[s]ervice charges include gratuities, taxes, and other hotel service charges."  Id. at *7.  That language doesn't work, the district court reasoned.  Id.

19

Here, Mauna Kea's pre-2017 disclosures read: "[W]e allocate a portion of the service fee to our employees as tips or wages and a portion of the service fee to pay for costs or expenses other than wages and tips of employees."  The effect matches the Wadsworth II disclosure.  It fails to adequately apprise customers that the service charge is not a tip.  See Wadsworth II, 2014 WL 6065875, at *7.

For consumers to be properly informed and for employees to receive their well-earned tips, specificity is required.  Consumers need to know how much of the service charge *actually* goes to tips for servers so they know whether and how much more to tip.

It appears Mauna Kea understood that making this kind of disclosure fulfills the law's aim.  Mauna Kea started making detailed disclosures in early 2017, soon after Rodriguez filed his complaint.  For example, one updated disclosure reads:

> All food and beverage functions are subject to a mandatory 22% surcharge, which consists of a 18.7% gratuity that is pooled and distributed to those F&B staffs servicing you and your function, and the remaining 3.3% is retained by the Hotel to cover non-itemized costs of the event (and not distributed as a tip or gratuity to the Hotel's employees). . . .  If you or your attendees wish to provide a tip to a specific server(s) or other employee(s) servicing you or your function, please feel free to do so.

This is sufficient disclosure under HRS § 481B-14.  It notifies consumers that part of the service charge is used for purposes other than wages and tips of employees.  And it specifies the percentage of the service charge that goes toward

20

tips.  Customers are informed about how much of a tip has already gone to servers, and there is no confusion that would lead to servers getting short-changed.  This satisfies HRS § 481B-14's objective.

To ensure compliance with both HRS § 481B-14's plain meaning, and its dual purposes to avoid consumer confusion and protect employee tips, we adopt a modified version of Wadsworth II's rule.

Thus, when the entire service charge is dispersed directly to employees as tips, no disclosure is necessary.

When no part of the service charge is dispersed directly to employees as tips, the employer may either (1) inform consumers the service charge is not a gratuity, or (2) inform consumers that the service charge is applied entirely to administrative costs.

And when some, but not all, of the service charge goes directly to employees as tips, the employer must inform consumers the amount or percentage of the service charge that is paid to food and beverage servers as tip income.

### III.

We vacate the ICA's January 9, 2025 judgment and affirm the circuit court's November 12, 2021 judgment.  We remand to the

21

circuit court for further proceedings consistent with this

opinion.

| | |
|---|---|
| Brandee J.K. Faria | /s/ Mark E. Recktenwald |
| (Mateo Caballero on the briefs) | |
| for petitioner | /s/ Sabrina S. McKenna |
| | |
| Richard M. Rand | /s/ Todd W. Eddins |
| (Kristi K. O'Heron on the | |
| briefs) | /s/ Lisa M. Ginoza |
| for respondents | |
| | /s/ Vladimir P. Devens |

